Argued and submitted May 27, reversed and remanded August 6, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# BENJAMIN BREAZILE,
*Appellant.*

## CF000277; A114984

74 P3d 1099

Louis R. Miles, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant appeals from a judgment of conviction for supplying contraband, ORS 162.185, and possession of less than one ounce of marijuana, ORS 475.992(4)(f). He assigns error to the trial court's denial of his motion to suppress statements he made to several corrections officials during an administrative investigation while he was incarcerated at Eastern Oregon Correctional Institution (EOCI). Defendant contends that he made the statements under compelling circumstances and that, because he was not advised of his *Miranda* rights before he made the statements, they were not voluntary and should have been suppressed. We reverse and remand.

The relevant facts, which we take from the trial court's findings and the evidence at the suppression hearing, are undisputed. In April 2000, corrections officers at EOCI conducted a random property search of defendant's belongings. During the search, the officers found tobacco mixed with another substance—later identified as marijuana—in the cap of a lotion bottle located in defendant's locked footlocker. Defendant did not speak with any corrections officials about the incident at that time.

Approximately one month later, after officials identified the substance as marijuana, defendant was sent to the East Lieutenant's office, located within the secure perimeter of the EOCI. Three corrections officials, Lieutenant Mitchell, Lieutenant Hickey, and Parklyn Maine, were waiting for defendant in the office. Mitchell and Hickey were officers at EOCI. Maine was an investigator for the Drug Investigations Unit of the Department of Corrections. Maine had asked to use Mitchell's office to question defendant about the marijuana. Maine was wearing civilian clothing, and the other officers were in uniform. Maine and Mitchell testified that defendant came to the office voluntarily, and the trial court so found. However, Maine testified that, if defendant had not come when initially summoned, he would have been ordered to come. She further testified that, had defendant failed to obey an order to come to the office, he would have faced administrative sanctions. Defendant testified that he understood that he would have been sanctioned had he failed to come to the office when summoned.

After defendant arrived, Maine informed him that she was conducting an administrative investigation concerning the marijuana found in his footlocker. She told defendant that she wanted to interview him for the purposes of an administrative hearing, and that, as a result of her investigation, he could face administrative sanctions. She did not, however, recall whether she told him that additional criminal charges could be brought against him as a result of her investigation. Maine did not give defendant *Miranda* warnings before questioning him, nor did she tell him that he was free to terminate the interview at any time.

Initially, defendant denied having any knowledge of the marijuana. He claimed that he had obtained the bottle of lotion from another inmate and that neither he nor the other inmate knew about the marijuana located in the cap. Mitchell replied that defendant's story was "not believable" and questioned whether defendant really expected the officials to believe it. Defendant was then directed to wait in the lobby outside Mitchell's office while the officials conferred. Having him wait outside was not an interrogation tactic, according to Maine, but, rather, it gave the officials an opportunity to discuss the plausibility of defendant's story.

Approximately 10 to 15 minutes later, the officials called defendant back into the office. Mitchell stated:

> "The reason I believe [defendant] was called back in was to repeat what we had discussed there towards the end of the first meeting and I shared with him that I'd have a lot more respect for him if he would be truthful and, with that, the meeting was either going to be terminated at that point or he was given the opportunity to talk."

Defendant then admitted that the marijuana belonged to him. Hickey told defendant that if he disclosed the source of the marijuana, Maine would recommend that he retain his visitation privileges. In response, defendant admitted that he had purchased the marijuana from another inmate. Defendant eventually was criminally prosecuted for supplying contraband and possession of less than one ounce of marijuana.

Before trial, defendant moved to suppress his statements to the corrections officials. He argued that the statements were made under compelling circumstances and,

therefore, that he was entitled to *Miranda* warnings before being questioned. He asserted that, in the absence of such warnings, his statements were involuntary and must be suppressed under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. The state responded that the prison setting in which the statements were made was not, standing alone, sufficient to require *Miranda* warnings; instead, the pertinent inquiry was whether the particular circumstances of the questioning created an environment in which defendant reasonably felt compelled to answer the questions of the corrections officials. According to the state, the circumstances of the interview were not compelling because the corrections officials were not conducting a criminal investigation, they neither threatened nor promised anything, and defendant could have ended the interview at any time.

The trial court determined that

> "defendant was an inmate at EOCI, that Defendant's footlocker was the scene of a crime and Defendant was a suspect, that Lt. Don Mitchell had an indicia of law enforcement, that no promises or threats of a coercive nature were made to Defendant, that Lt. Don Mitchell and Parklyn Maine were members of law enforcement for purposes of *Miranda*, that Defendant was asked to be interviewed by Parklyn Maine and Lt. Don Mitchell, that Defendant came voluntarily to the interview, that Defendant was free to stop the interview at anytime, [and] that Defendant was not read *Miranda* rights * * *."

The court held that, under those circumstances, *Miranda* warnings were not required before defendant was questioned. Defendant appeals from the ensuing order denying his motion to suppress.

On appeal, the parties renew the arguments that they made before the trial court. Under both Article I, section 12, and the Fifth Amendment, the state must prove the voluntariness of a defendant's statement by a preponderance of the evidence. *State v. Stevens*, 311 Or 119, 137, 806 P2d 92 (1991). When there is evidence in the record to support the trial court's findings of fact relating to voluntariness, those facts bind us on review. *Id.* at 135. We are not bound by the

trial court's ultimate conclusion that defendant's statements were involuntary; we assess anew whether the facts suffice to meet constitutional standards. *Id.*; *State v. Warner*, 284 Or 147, 157, 585 P2d 681 (1978). With the foregoing standards in mind, we turn to the parties' arguments on appeal.

We begin with defendant's challenge under Article I, section 12. Under that provision, "[a] defendant's admissions may be suppressed as involuntary either because they were the product of coercion or because the defendant's *Miranda* rights were violated." *State v. Gable*, 127 Or App 320, 324, 873 P2d 351, *rev den*, 319 Or 274 (1994). Here, defendant contends that his statements were involuntary because they were not preceded by *Miranda* warnings, which are required whenever a person is questioned either in full custody or under compelling circumstances. *State v. McMillan*, 184 Or App 63, 67, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003). Because defendant does not assert that he made the challenged statements while in full custody, we confine our focus to whether he made them under compelling circumstances. "[T]he relevant inquiry is how a reasonable person in the [person's] position would have understood the situation[,]" taking into account the totality of the circumstances surrounding the questioning. *State v. Werowinski*, 179 Or App 522, 529, 40 P3d 545, *rev den*, 334 Or 632 (2002) (quoting *State v. Clem*, 136 Or App 37, 42, 900 P2d 1064 (1995) (emphasis omitted)).

Defendant argues that the circumstances of his questioning were compelling in the following respects:

"The testimony of both of the officers showed that, had defendant not initially come to the office, he would have been ordered to do so. Defendant's testimony revealed his understanding that, had he not gone to the office, he would have been punished. His 'voluntariness' was dictated by his desire to avoid punishment. He viewed the call to the office as an order that he must obey. This perception was reasonable. Even the officers testified that, had he refused to go to the office, there would have been sanctions.

"* * * The presence of uniformed law enforcement officers increased the coercive nature of their encounter with defendant.

"The officers testified, and the court found, that defendant was free to terminate the interview at any time, and he was free to leave the office. However, defendant was not informed of this."

The state responds that "in this setting *Miranda* rights are inapplicable to an investigation of a prison discipline matter and run directly contrary to the due process limitations found to apply to such matters." The state explains:

"The standard *Miranda* warnings require a police officer to advise a suspect that he has the right to counsel and the right to remain silent. Yet it is settled that a prisoner has no right to counsel on a *prison disciplinary charge*. It is also settled that prison officials are permitted to draw adverse inferences from a prisoner's election not to answer questions pertaining to the facts that give rise to the *discipline*. If that is the case, it is difficult to envision how a correctional officer can effectively advise a prisoner about rights that conflict or do not apply to the prisoner. It would seem odd that such an officer might be obligated to tell an inmate that he has a right to court appointed counsel, but not really, on the *disciplinary inquiry*. At most, some of the *Miranda* concepts may be viable, without undermining outright the corrections department's institutional authority and their mandate to investigate *violation of prison rules*."

(Emphasis added.)

■ The emphasized portions of the text demonstrate the difficulty with the state's position. Although defendant made the statements to corrections officials during an *administrative* investigation, we are concerned here with the admission of the statements into evidence in a *criminal* proceeding. The fact that defendant had limited constitutional rights in a prison discipline proceeding does not determine the admissibility of his statements in a criminal trial. The state asserts that, if defendant's position were adopted, prison officials would have to give *Miranda* warnings to inmates in every disciplinary investigation. We disagree. There could be any number of cases in which questioning in a prison disciplinary investigation, albeit in what might otherwise be compelling circumstances, does not involve possible criminal conduct. In those cases, *Miranda* warnings would not be required. By the same token, however, the veil of administrative proceedings

cannot be used to shield the failure to provide *Miranda* warnings where, under compelling circumstances, government officials question an inmate concerning possible criminal conduct, and the resulting statements are later offered against the inmate in a criminal proceeding.

The state also argues that, even though the interview took place in a prison setting, it did not constitute "custodial interrogation" for *Miranda* purposes. The state asserts:

> "As both Maine and Mitchell testified, they had not been given peace officer status, and held no arrest or charging authority. While the trial court also found that the correctional officers—at least the lieutenant—bore indices of a law enforcement officer, that aspect relates more correctly to the totality of the circumstances pertinent to the voluntariness issue, rather than to the custody issue *vis-à-vis* the necessity of *Miranda* warnings."[1]

However, as discussed, defendant does not contend that he was entitled to *Miranda* warnings simply because he was "in custody" at EOCI. It is well established that

> "the focus is not *on the setting alone*, that is, whether the suspect is questioned at home, on the street or in a police bureau office; the focus is instead on the extent to which the particular circumstances *of the questioning* create an environment in which the suspect reasonably will feel compelled to answer the questions of the police."

*State v. Goree*, 151 Or App 621, 637, 950 P2d 919 (1997), *rev den*, 327 Or 123 (1998) (first emphasis added). It is true that *Miranda* warnings are not necessarily required before a suspect who is incarcerated in a corrections facility is questioned by authorities. *See id.* But that does not end the discussion.

---

[1] We do not understand the state to argue that, merely because the corrections officials were not peace officers, they were incapable of creating compelling circumstances for purposes of determining the necessity of *Miranda* warnings. Each of the officials was a government official, and Maine was a drug investigator. The state has proffered no authority, nor have we found any, suggesting that persons in those officials' positions are exempt from the duty to give *Miranda* warnings before questioning inmates under compelling circumstances concerning possible criminal conduct. *See McKune v. Lile*, 536 US 24, 36, 122 S Ct 2017, 153 L Ed 2d 47 (2002) (stating that "the privilege against self-incrimination does not terminate at the jailhouse door").

The issue, rather, is how a reasonable person *in defendant's position* would have understood the circumstances of his questioning. Defendant's status as a prisoner and his understanding of the rules governing his status are relevant in making that determination.

In *Goree,* the defendant sought to suppress incriminating statements that he made while incarcerated. The defendant's girlfriend, Dobbins, had agreed to help the police investigate the defendant's role in a murder while he was in custody on unrelated charges. Dobbins visited the defendant in jail and, during her visits, she wore a body wire that recorded their conversations. The defendant made incriminating statements to Dobbins, and he was charged with murder. In support of suppression, the defendant argued that his statements were made under compelling circumstances. The trial court denied suppression, and we affirmed. We reasoned:

> "[A]lthough defendant was being held on the kidnapping charges and was not free to leave the jail, the source of his inability to leave was not Dobbins. He could not leave the jail because he was being held on unrelated kidnapping charges. He met with Dobbins on his own volition. He did so in a visiting area in the jail facility that consisted of two rooms separated by a plexiglass wall and talked to her by a telephone. He knew that he was under no compulsion to answer any of her questions. He knew that he could leave the room and terminate the visit at any time. * * * [T]herefore, even though defendant was being held in a facility he was not at liberty to leave, the circumstances of the questioning were not compelling, and no *Miranda* warnings were required."

*Goree,* 151 Or App at 638.

■    Here, as in *Goree,* the interview was not the ultimate reason for defendant's being in custody. However, important differences between the two cases lead to a different conclusion here. In *Goree,* the defendant's girlfriend questioned him in the visiting room of the jail. The defendant knew that he could end their conversation by leaving the visiting room and that he would suffer no legal consequences for doing so. Here, in contrast, it is undisputed that defendant could have been ordered to report to Mitchell's office or face administrative

sanctions for refusing to do so. Defendant understood that, had he refused to go, he would have been sanctioned. The questioning was conducted by a special drug investigator for the Department of Corrections and two uniformed prison officials, and it concerned an administrative violation involving possible criminal conduct. Finally, the questioning occurred in a lieutenant's office and, despite the trial court's finding that defendant could terminate the interview at any time, there is no evidence in the record that defendant knew he could leave. It is irrelevant that defendant could, in fact, have ended the interview if he did not know that he could do so. As discussed, the question is how a reasonable person in defendant's position would understand the situation, not what the situation actually was.

The circumstances became more compelling after the officials exerted further control over defendant by making him wait outside the office for 10 to 15 minutes before continuing their questioning. Considering the totality of the circumstances, a reasonable person in defendant's situation would have understood that he was being questioned under compelling circumstances. Because *Miranda* warnings were first required, Article I, section 12, of the Oregon Constitution requires the suppression of defendant's statements in this criminal prosecution. Our conclusion obviates the need to consider whether the unwarned questioning of defendant violated the Fifth Amendment.

The state argues that any error in admitting the statements was harmless because the marijuana was found in a locked footlocker to which only defendant had access. However, the indictment alleged with respect to both charged offenses that defendant had knowledge of the marijuana. Because the marijuana was found inside the cap of a container, we cannot say that there is "little likelihood that the error affected the verdict." *See State v. Walton*, 311 Or 223, 230-31, 809 P2d 81 (1991).

Reversed and remanded.