Argued and submitted October 13, 2006, affirmed September 12, 2007

# STATE OF OREGON,
*Respondent,*

*v.*

# JASON ANDREW DUNLAP,
*Appellant.*

## CR030520; A127735

168 P3d 295

Marc Sussman argued the cause and filed the brief for appellant.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were

Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Ortega, Judge, and Breithaupt, Judge pro tempore.

ORTEGA, J.

## ORTEGA, J.

After a trial to the court, defendant was convicted of two counts of encouraging child sexual abuse in the second degree, ORS 163.686, and was sentenced to five years' probation.[1] He appeals, assigning error to the trial court's denial of his motion to suppress evidence discovered as the result of the warrantless seizure and search of his computer; its denial of his motion to suppress statements that he made to his probation officer and other law enforcement officers; and its denial of his motion for judgments of acquittal on the charges. We affirm.

At the time that defendant committed the crimes at issue, he was serving terms of probation imposed for a conviction in Yamhill County for invasion of personal privacy, ORS 163.700, and convictions in Washington County for invasion of personal privacy and encouraging child sexual abuse in the third degree, ORS 163.687. Defendant was under the supervision of a Yamhill County parole and probation officer, Settell. His combined conditions of probation included a "sex offender package," which included the requirement that defendant consent to a search of his person, vehicle, and property without a warrant when the supervising officer had a reasonable ground to believe that the search would disclose evidence of a violation, and the requirement that he promptly and truthfully answer all reasonable inquiries. The sex offender package conditions also required defendant to submit to a polygraph examination every six months.

---

[1] ORS 163.686 provides, in part:

"(1) A person commits the crime of encouraging child sexual abuse in the second degree if the person:

"(a)(A)(i) Knowingly possesses or controls any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child for the purpose of arousing or satisfying the sexual desires of the person or another person[.]

"\* \* \* \* \*

"(2) Encouraging child sexual abuse in the second degree is a Class C felony."

As pertinent here, ORS 163.665(3)(f) defines "[s]exually explicit conduct" as the actual or simulated "[l]ewd exhibition of sexual or other intimate parts."

In June 2003, defendant submitted to a regularly scheduled polygraph examination. When he was asked before the test if he had viewed any pornography, he answered that he had and that it consisted of pictures of men, women, and children. After defendant passed the polygraph, the polygraph examiner informed Settell that defendant had been "viewing and possibly possessing pornography on his home computer."

At Settell's request, defendant met Settell on June 11 at Settell's office. The office measured 8 feet by 10 feet. Defendant was not placed in handcuffs or restrained, and Settell did not tell him that he would be taken to jail or placed in custody that day. Another officer, Pesterfield, remained standing nearby. Defendant acknowledged to Settell that, over the preceding six or seven months, he had been viewing pornography on his computer. Settell expressed a desire to know what sites defendant had viewed and wanted to search the computer. At one point, Settell and Pesterfield left the office to run a computer search, instructing defendant not to leave while they were gone. Ultimately, Settell obtained defendant's oral consent to search his computer and his residence for pornography.

Defendant, Settell, a second parole and probation officer, and an office intern then traveled together in a county vehicle to defendant's residence. After they arrived there, they were joined by Newberg Police Officer Kosmicki, who was in uniform with a badge and weapon. Kosmicki filled out a consent to search form, which defendant signed. Kosmicki heard Settell tell defendant that defendant did not have to consent to the search. Defendant told Kosmicki that the computer had pictures of families in the nude. Settell seized the hard drive of the computer and transferred it to Kosmicki, who transported it to the Newberg police station for forensic examination.[2] According to Settell, defendant never objected to seizure or search of the computer.

---

[2] Defendant had a second computer that he used for work. He stated that he did not use it to view pornography, and, after he agreed to install filtering software on that computer, he was permitted to retain it.

After police had examined the hard drive of defendant's computer, Newberg Police Officer McCuistion contacted Settell and informed him that it contained "hundreds" of child pornography images. Settell and McCuistion met with defendant on June 16, a few days after the initial interview and search. Settell had reviewed a list that defendant had prepared of search terms he had used and sites he had visited. Settell thought that some of the sites indicated "deviant interest," such as sites relating to "teen sex," "nudism youth and family," and voyeurism.

During the June 16 meeting, Settell and McCuistion questioned defendant further about whether he had been viewing child pornography. Defendant told McCuistion that it had been "about a year" since he had looked at pornography on the computer; he denied that he had a collection of pornography. Defendant stated that the only other person who had access to his computer was his fiancée and that he was the only one who viewed pornography on it. Defendant stated that he did not use the images to masturbate but that he was attracted to them. He asserted that he destroyed the images in order to "break [the] cycle."

At that point, McCuistion advised defendant of his *Miranda* rights. She then informed him that the police had found child pornography images on his computer and asked how they had gotten there. Defendant asserted that he accessed the images inadvertently while viewing adult pornography or when his computer directed him to such sites. He said that when he came across the images, he viewed them for 30 to 60 seconds and then deleted them. Defendant admitted printing some images of children as young as eight years old posed in a sexually explicit manner and admitted copying some child pornography onto a CD. According to McCuistion, defendant also admitted looking for "teen sex and maybe pre-teen sex," looking at "family nudes," and viewing "hundreds of images of nude girls between the age of six and fifteen years old." Defendant indicated that he wished to stop answering questions and contact an attorney. The police ceased their questions and placed him under arrest.

Defendant was charged with nine counts of encouraging child sexual abuse in the first degree, ORS 163.684,

and two counts of encouraging child sexual abuse in the second degree, ORS 163.686. Each of the 11 counts was based on a particular image found on defendant's computer. Before trial, relying on the state and federal constitutional guarantees against unreasonable searches and seizures and self-incrimination, defendant moved to suppress any and all evidence obtained as the result of the seizure and search of the computer taken from his home on June 11 and evidence derived therefrom, as well as any and all statements made to probation and law enforcement officers on or after June 11 and evidence derived therefrom.[3] The trial court found that being questioned by a probation officer does not constitute a compelling circumstance and that the questioning of defendant did not involve any other compelling circumstances; it also found that defendant freely consented to the search of his computer. The trial court therefore denied the motion to suppress.

Defendant waived his right to a jury trial. At the close of the evidence, defendant moved for judgments of acquittal on all counts. As pertinent here, he argued that there was no evidence that any of the children in the images on which the charges were based were actual children or that the conduct in which they appeared to be engaged was not digitally manipulated; that at least three of the images, including an image that was the basis for one of the second-degree encouraging child sexual abuse charges, failed to meet the statutory requirement that it represented a lewd display of the sexual parts of a child; and that evidence was lacking that defendant used either of the images on which the second-degree charges were based for sexual gratification. The trial court denied the motions. The court ultimately found defendant not guilty of all nine counts of first-degree encouraging child sexual abuse and guilty of both counts of

---

[3] Article I, section 9, of the Oregon Constitution provides that "[n]o law shall violate the right of the people to be secure in their * * * houses * * * against unreasonable search, or seizure; and no warrant shall issue but upon probable cause[.]" The text of the Fourth Amendment to the United States Constitution is the same in all material respects. *State v. Juarez-Godinez*, 326 Or 1, 5 n 2, 942 P2d 772 (1997). Article I, section 12, of the Oregon Constitution provides that "[n]o person shall be * * * compelled in any criminal prosecution to testify against himself." The Fifth Amendment provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself[.]"

second-degree encouraging child sexual abuse. In regard to the image on which the second of those counts was based, which was a cropped image of the torso of a naked female child, the trial court found that, although it was "hard to tell," a hand that was positioned near the child's genital area was that of an adult rather than the child's own hand.

In his first assignment of error on appeal, defendant contends that the trial court erred in denying his motion to suppress evidence derived from the warrantless seizure and search of his computer. Specifically, he again argues that his consent to that search was not voluntary. Relying on *Minnesota v. Murphy*, 465 US 420, 104 S Ct 1136, 79 L Ed 2d 409 (1984); *State v. Gaither*, 196 Or App 131, 100 P3d 768 (2004), *rev den*, 338 Or 488 (2005); and *State v. Tenbusch*, 131 Or App 634, 886 P2d 1077 (1994), *rev den*, 320 Or 587, *cert den*, 516 US 991 (1995), defendant contends that his agreement to consent to the search as a condition of his probation did not constitute a waiver of his Article I, section 9, rights and that, instead, whether he voluntarily consented depends on whether he believed the search to be inevitable, whether he was given an opportunity to decline consent, and whether he believed that he would be arrested if he declined to consent. He further argues that consent given to avoid revocation of probation is involuntary as a matter of law. Defendant contends that the record in this case demonstrates, and the trial court did not find otherwise, that defendant knew that he was subject to a probation sanction; that he believed that he was subject to immediate arrest and incarceration in the county jail if he declined to consent; that he believed that the search was inevitable; and that, conversely, he did not know that he could refuse consent. He also argues that, to the extent that his oral consent was not voluntary, his written consent did not make it so. As to his rights under the Fourth Amendment, defendant contends that the factors pertinent to that inquiry—including whether he was in custody or subject to other coercive physical conditions—were "trumped" in this case by the coercive effect of knowing that, if he did not consent, he would be sanctioned and the search would occur anyway. Finally, he argues that the trial court's error in denying his motion to suppress evidence derived from the search of his computer was not harmless because the record

does not establish any other source for the relevant evidence—the two images that were the basis of his two convictions.

The state responds that, consistently with *State v. Davis*, 133 Or App 467, 891 P2d 1373, *rev den*, 321 Or 429 (1995), acquiescence to a search in order to avoid violating a condition of probation requiring the probationer to consent to search does not constitute unconstitutionally coerced consent. Rather, coercion arises only if the probationer claims his constitutional privilege and the state leads the probationer reasonably to believe that he will be penalized for doing so. According to the state, in this case, defendant did nothing to claim his constitutional protection against unreasonable searches; to the contrary, even after being informed that he need not consent, he did so. Nor, the state argues, did he reasonably believe that he was being threatened with revocation of probation; although the probation officer informed defendant that, if he did not consent, he would probably go to jail, the state contends that that threat reasonably should have been understood to mean that he would be taken into custody for the purposes of probation violation proceedings— indeed, under *Murphy*, if he had invoked his constitutional rights, as a matter of law, his probation could not have been revoked on that ground, nor would it have been reasonable for him to believe that it could be. In short, the state argues, where defendant never invoked his constitutional privilege against unreasonable searches and was not reasonably led to believe that he would be penalized for invoking that privilege, he was not subject to the "classic penalty" that he now asserts existed.

■■■ A warrantless search violates Article I, section 9, unless it is justified by an exception to the warrant requirement; consent is such an exception. *State v. McMilian*, 191 Or App 62, 67, 80 P3d 538 (2003), *rev den*, 337 Or 248 (2005). Where the state relies on a defendant's consent to validate a warrantless search, the state must prove by a preponderance of the evidence that the defendant's consent was voluntary; under Article I, section 9, the test for voluntariness of consent is whether, under the totality of the circumstances, the defendant's consent was an act of free will or, instead, resulted from police coercion, either express or implied. *State*

*v. Hall*, 339 Or 7, 20, 115 P3d 908 (2005). Where a defendant consented in acquiescence to an assertion of police authority, the court's determination as to the lawfulness of the police conduct may bear directly on its determination of the voluntariness of the defendant's consent. *Id.* at 21; *see also State v. Hirsch*, 267 Or 613, 622, 518 P2d 649 (1974) (where police officers threaten to do only what the law permits them to do, the coercion that the threat may produce is not constitutionally objectionable).

 Under Article I, section 9, a probation condition requiring a probationer to consent to a search is not self-executing; if a probationer refuses to consent, the officer has no authority under the probation condition to search, although the probationer may be subject to a sanction for violating the condition. *Davis*, 133 Or App at 473-74. In determining whether a probationer who was subject to a condition of probation that required him to submit to a search voluntarily consented to a search, we consider whether the probationer was effectively denied a reasonable opportunity to refuse the search or whether the environment was sufficiently coercive to preclude him from doing so. *Id.* at 475. In reviewing the voluntariness of defendant's consent, we are bound by the trial court's findings of historical fact if there is evidence in the record to support them.

 Defendant here does not dispute that the police lawfully sought his consent to search his computer and that he was subject to a condition of probation requiring him to consent to such a search. The question then becomes whether defendant was denied a reasonable opportunity to refuse the search request or whether the environment was so coercive as to preclude him from doing so.

The trial court found that, when Settell asked defendant for consent to search his computer, defendant responded, "OK, fine." The court also found that defendant signed a consent form presented to him by Kosmicki and that the form advised defendant that he did not have to allow the officer to search. Those findings are supported by evidence in the record. Moreover, they demonstrate that defendant was afforded the opportunity to refuse to consent to the search of

his computer. Conversely, nothing in the trial court's findings, nor any other evidence in the record, demonstrates that the officers' conduct preceding and surrounding the request to search created a sufficiently coercive environment so as to render defendant's consent involuntary.

Defendant points to his testimony at trial that he felt compelled to consent by Settell's silence and his body language in response to defendant's inquiry regarding whether he had a choice to consent, and by what he describes as his reasonable belief that he would immediately be arrested if he declined to consent. Even assuming that Settell's demeanor was as described by defendant, it was not sufficiently coercive to render his consent to search involuntary. And, as in *Davis*, the "pressure" not to violate the conditions of his probation also was not sufficient. *See* 133 Or App at 476 ("Other than the pressure on defendant not to violate the terms of his probation, there was nothing coercive about the circumstances.").

The described evidence demonstrates that the search of defendant's computer did not violate Article I, section 9. The same evidence supports the conclusion that the search did not violate the Fourth Amendment. *See State v. Ry/Guinto*, 211 Or App 298, 309, 154 P3d 724 (2007) (the test under the Fourth Amendment for the voluntariness of consent to search is "essentially the same" as the test under Article I, section 9; citing *Schneckloth v. Bustamonte*, 412 US 218, 248-49, 93 S Ct 2041, 36 L Ed 2d 854 (1973)). The trial court did not err, then, in denying defendant's motion to suppress evidence derived from the search of his computer.

In his second assignment of error, defendant contends that the trial court erred in denying his motion to suppress evidence of statements he made to Settell and other law enforcement officials during his June 11 interview in Settell's office, during the visit to defendant's home, and during the meeting with Settell and McCuistion on June 16—statements which were made before defendant received *Miranda* warnings at the conclusion of the June 16 meeting. In addition, he seeks suppression of statements made after he received *Miranda* warnings, on the ground that those statements repeated and expanded on his unwarned statements.

Again relying on *Gaither* and *Tenbusch*, defendant contends that Article I, section 12, requires suppression of the statements because he made them under compelling circumstances, including not only the fact that he was subject to probation sanctions—including immediate detention—if he did not answer the officers' questions, but also the facts that he was "summoned" to the June 11 meeting with Settell; that there were several officers present at that meeting and the June 16 meeting; that, at the June 11 meeting, he was told to remain in Settell's office while Settell ran a computer search; that he was required to travel to his home in Settell's vehicle and was accompanied by several people; and that, at his home, he was told where to sit and was not free to move about or get a glass of water without asking permission. He also argues that the Fifth Amendment requires suppression of his statements because, at the time he made them, he reasonably believed that he would be penalized for invoking his privilege against self-incrimination. Finally, defendant contends that, to the extent that the trial court erred in failing to suppress the statements, the error was not harmless because many of the statements were inculpatory.

The state responds that, consistently with the evidence and the trial court's findings, defendant's "motive" in answering the officers' questions was to cooperate with the officers and that, accordingly, his statements were voluntary. Conversely, the state contends, defendant points to no evidence demonstrating that any conduct by any state actor led him to believe that he would be penalized for invoking his privilege against self-incrimination; in particular, being "glared at" by Settell was insufficient. Rather, consistently with the trial court's findings that the officers made no threats or promises, the only reasonable understanding of defendant's situation was that any penalty that might be imposed would be a result of defendant's violation of the probation condition. The state also contends that defendant's unwarned statements to Settell on June 11 and 16 merely repeated information he previously had disclosed to the polygraph examiner and that his inculpatory statements to McCuistion—including his statements that he searched for and viewed images of young girls—were made after he received *Miranda* warnings.

■■ We first consider defendant's rights under Article I, section 12, of the Oregon Constitution. Under that provision, a defendant's admissions may be suppressed as involuntary if the statements were the product of coercion or were obtained in violation of the defendant's *Miranda* rights. *State v. Breazile*, 189 Or App 138, 143, 74 P3d 1099 (2003). Police are required to give *Miranda* warnings to a defendant either when the defendant is in full custody or when the circumstances surrounding the questioning are compelling. *Id.*; *see also State v. Coen*, 203 Or App 92, 99, 125 P3d 761 (2005), *rev den*, 341 Or 141 (2006). Compelling circumstances exist when, taking into account the totality of the circumstances, a reasonable person in the defendant's position would feel compelled to answer a police officer's questions. *Coen*, 203 Or App at 99; *see also State ex rel Juv. Dept. v. Loredo*, 125 Or App 390, 394, 865 P2d 1312 (1993) (whether the circumstances were "compelling" depends on whether a reasonable person in the position of the person being questioned would have felt required to stay and answer all of the officer's questions). The totality of the circumstances includes both the setting of the questioning and the nature of the questions. *Breazile*, 189 Or App at 145.

■■ ■■ The state must prove the voluntariness of defendant's statements by a preponderance of the evidence. *Id.* at 142. In reviewing the voluntariness of defendant's statements, we are bound by the trial court's findings of historical fact if the evidence supports them; we assess anew whether the facts suffice to meet the constitutional standard. *Id.* at 142-43; *see also State v. Terry*, 333 Or 163, 171, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002).

■■ We agree with the state that, on this record, the circumstances in which defendant made his pre-*Miranda* statements were not sufficiently compelling to violate Article I, section 12. In particular, nothing in the record indicates that the police told defendant that he would be penalized in terms of his probation status for invoking his constitutional privilege against self-incrimination. Nor were any of the settings, including Settell's office and defendant's apartment, in which he was questioned compelling, notwithstanding the presence at various times of more than one officer.

■ We reach the same conclusion under the Fifth Amendment to the federal constitution. As we noted in *State v. Bush*, 203 Or App 605, 613, 126 P3d 705 (2006), in order for us to hold that a defendant's *Miranda* rights have been violated under the federal constitution, we must determine that, without having been afforded a recitation of his rights against self-incrimination, the defendant was " 'subjected to restraints comparable to those associated with a formal arrest.' " (Quoting *Berkemer v. McCarty*, 468 US 420, 441, 104 S Ct 3138, 82 L Ed 2d 317 (1984).) We already have determined that compelling circumstances were not present in this case for purposes of Article I, section 12, and we conclude that the circumstances here also were not comparable to those associated with a formal arrest.

Finally, because we conclude that defendant was not entitled under Article I, section 12, or the Fifth Amendment to *Miranda* warnings during the June 11 and June 16 meetings, we necessarily reject his argument that his post-*Miranda* statements also must be suppressed. For all of the stated reasons, the statements that defendant made to law enforcement officers were not made in contravention of his rights against self-incrimination. The trial court therefore did not err in denying defendant's motion to suppress evidence of those statements.

In his third assignment of error, defendant asserts three arguments in support of his view that the trial court erred in denying his motion for judgments of acquittal on the two counts of encouraging child sexual abuse in the second degree. Those counts—Counts 10 and 11—were based on particular images admitted into evidence as, respectively, Exhibits 10 and 11. Defendant contends, first, that the state failed to meet its burden to prove that those images involved real children engaged in real acts of sexual abuse; according to defendant, in order to meet that burden, the state was required to present testimony from an expert in computer imaging, not merely the images themselves. Second, defendant argues that the state failed to show that he actually viewed the images constituting Exhibits 10 and 11; specifically, he contends that a user can download a file without viewing it and that unwanted files can be created on a

computer without the user's knowledge. Defendant further argues that, to the extent that the images were date-stamped by his computer, those dates could be the dates that the images were deleted—again, possibly without his having intentionally accessed or viewed the images. Defendant contends that the state therefore failed to prove that he possessed the images with the required mental state. Finally, defendant argues that the image portrayed in Exhibit 11 does not meet the element in ORS 163.686 pertaining to depiction of "sexually explicit conduct involving a child," which is defined in part in ORS 163.665 as the "[l]ewd exhibition of sexual or other intimate parts." Defendant concedes that the image is cropped to focus on the child's genital area, but contends that nothing else about the image suggests sexual desires or activity. Defendant urges us to reverse his convictions on both counts under his first and second arguments or, at a minimum, his conviction on Count 11 based on his third argument.

The state responds that there was evidence from which the trier of fact could conclude that Exhibits 10 and 11 involved real children in real acts of child abuse and that, conversely, there was no evidence demonstrating that such images could be fabricated. Accordingly, the state contends that the evidence was not insufficient as a matter of law due to the lack of expert testimony establishing those facts. As to defendant's second argument, the state argues that it was not required to prove that defendant actually viewed each separate image in his computer files, only that he knowingly possessed images of the relevant type, as required by ORS 163.686. According to the state, it was entitled to, and did, prove that element by demonstrating that defendant maintained such images on his computer after being aware of their content or that he obtained them from a site that advertised their content. The state contends that there was ample evidence of that conduct by defendant, including his own admissions that he searched the Web for teen and preteen images and his admissions that he viewed, maintained for short periods, and printed such images before deleting them—all of which, the state argues, constitutes circumstantial evidence that he knowingly possessed the particular

images that were the bases of Counts 10 and 11. The state also contends that the same evidence constitutes circumstantial evidence that defendant possessed the images for purposes of sexual arousal. Finally, as to whether the jury could find that Exhibit 11 was a lewd image within the meaning of ORS 163.665(3)(f), the state argues that the factfinder properly could infer that the hand near the child's nude genitals was that of an adult and not the child herself.

■　In reviewing the denial of a motion for a judgment of acquittal, we examine the evidence in the light most favorable to the state, accepting reasonable inferences and credibility choices that the factfinder could have made, to determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. Stamper*, 197 Or App 413, 416, 106 P3d 172, *rev den*, 339 Or 230 (2005) (citing *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989)).[4]

■　We first consider whether defendant was entitled to a judgment of acquittal on the charges of encouraging child sexual abuse in the second degree on the ground that the state's evidence was insufficient to prove that the children portrayed in the relevant images were real children engaged in actual conduct constituting sexual abuse. *See State v. Stoneman*, 323 Or 536, 540-41, 547, 920 P2d 535 (1996) (statutes criminalizing conduct involving materials depicting sexually explicit conduct by children apply only to materials depicting actual children). He was not. First, each of the relevant images—Exhibits 10 and 11—appears on its face to depict an actual child or children engaged in actual conduct. Second, and conversely, there is no evidence in the record demonstrating that such images are capable of fabrication to the point of being indistinguishable from images of actual children. Accordingly, on this record, a factfinder could find beyond a reasonable doubt that the images are of actual children actually engaged in the conduct depicted. We therefore

---

[4] Where the meaning of an applicable statute is at issue, we review the court's ruling as a matter of law, resolving the question of the statute's meaning under the interpretive method set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). *Stamper*, 197 Or App at 416-17. As discussed below, here we resolve on factual grounds each of defendant's challenges to the denial of his motion for judgments of acquittal.

reject defendant's first argument challenging the denial of his motion for a judgment of acquittal.

We next consider whether defendant was entitled to a judgment of acquittal on Counts 10 and 11 based on an asserted lack of evidence that he actually viewed the relevant images with, moreover, the requisite mental state. We reject that argument as well. Although there is evidence in the record from which a factfinder could infer that images can be created on a computer without the user having viewed the images, there also is evidence from which the factfinder could infer that defendant viewed the relevant images, including the fact that each of the images was created on a particular date and at a particular time and that each was last accessed and modified several days later. In any event, even assuming that defendant never *viewed* those particular images, there was evidence from which the factfinder could infer that he knowingly possessed them for those time periods, including his admissions that he visited pornographic Web sites, that he sought teen and preteen images, and that he viewed and printed numerous such images, as well as evidence that there were thousands of such images on his computer. As to whether defendant had the requisite mental state—that he possessed the images for the purposes of sexual arousal—defendant admitted that he was attracted to images like those contained in Exhibits 10 and 11 and that he was "excited" by searching for them. That evidence was sufficient to permit an inference that defendant had the required mental state.

Finally, we consider whether the image that was the basis of Count 11—depicting a female child's nude torso—was, as defendant argues, insufficient to permit the factfinder to find or infer beyond a reasonable doubt that the child depicted therein was engaged in "sexually explicit conduct"—as pertinent here, a "[l]ewd exhibition of sexual or other intimate parts." ORS 163.686; ORS 163.665(3)(f). We reject defendant's contention. The image not only is cropped to focus primarily on the child's nude genital area; it also includes a hand near the child's genital area that a factfinder could infer belonged to someone other than the child. The

trial court did not err in denying defendant's motion on that ground.

Affirmed.