Argued and submitted January 22, affirmed May 20, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ROY ALLEN WAMMACK,
*Defendant-Appellant.*

Tillamook County Circuit Court
061144; A133708

208 P3d 1000

David J. Celuch argued the cause and filed the brief for appellant.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Barron, Judge pro tempore.*

BARRON, J. pro tempore.

---

* Barron, J. pro tempore, *vice* Wollheim, J.

### BARRON, J. pro tempore

■ Defendant appeals a judgment of conviction for possession of a controlled substance. He argues that the trial court erred in denying his motion to suppress evidence, contending that the police officer who searched him lacked "reasonable grounds" to search and that defendant's subsequent consent to the search was coerced by a condition of his post-prison supervision (PPS) that required him to submit to a search at the request of his supervising officer. The state concedes that the police officer did not have reasonable grounds to search defendant and that, therefore, the only issue on appeal is whether defendant lawfully consented to the search. We accept the trial court's findings of historical facts that are supported by the evidence, but we independently assess whether those facts support the trial court's legal conclusions. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993); *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991). We state the facts in accordance with the trial court's findings on the issue of consent, *see State v. Shaff*, 343 Or 639, 641, 175 P3d 454 (2007), and affirm.

On June 23, 2006, officers Poitras and Worley of the Tillamook City Police Department approached defendant and his girlfriend, Thorne. Worley had told Poitras that he had probable cause to believe that defendant and Thorne had taken some property from a church dumpster. However, Poitras decided to contact defendant because, a few days earlier, defendant's supervising officer, Fertick, had asked Poitras to search defendant for drugs if he had contact with him.

Poitras told defendant that he wanted to search him. Defendant told Poitras that he did not have a PPS condition requiring that he consent to a search. On prior occasions when Poitras had had contact with defendant and asked to search him, defendant had refused to consent, but, on those occasions, Poitras was not asking to search defendant pursuant to a request from Fertick. After defendant told Poitras that he did not have to consent to a search, Poitras told him that Fertick wanted a search conducted and that he would be searching defendant for evidence of a PPS violation, including drugs. Defendant told Poitras that he wanted to hear that

from Fertick. Using his cell phone, Poitras called Fertick and let defendant talk to him. Fertick testified that he told defendant that he was subject to search pursuant to his conditions of PPS. He also testified that, if defendant had refused to be searched, Fertick would have had defendant taken into custody. While still talking to Fertick, defendant put both hands up and told Poitras, "You can search me." Poitras took the phone from defendant and terminated the call. During the search, Poitras found two small baggies that later tested positive for methamphetamine. Defendant and Thorne testified that defendant never consented to Poitras's search.

■    The trial court found that defendant had consented to Poitras's search. Defendant contends on appeal that he did not voluntarily consent to the search of his person, because he was coerced, in that a condition of his PPS directed him to submit to a search at the request of his supervising officer. The state argues that the PPS condition requiring defendant to submit to a search is not coercive.

This case is controlled by our decisions in *State v. Davis*, 133 Or App 467, 891 P2d 1373, *rev den*, 321 Or 429 (1995), and *State v. Dunlap*, 215 Or App 46, 168 P3d 295 (2007).[1]

In *Davis*, a federal probation officer went to the defendant's home on an unannounced home visit. The defendant had conditions of probation requiring him to submit to such visits and to searches. 133 Or App at 469. Upon entry into the defendant's home, the probation officer smelled marijuana, after which he asked the defendant what was going on and said, "Why don't you give me a tour of your apartment." *Id*. The defendant replied, "You got me" and led the probation officer directly into his bedroom, where the probation officer saw a grow light and several marijuana plants inside an open closet. *Id*. The probation officer then left the residence to call for a backup officer and told the defendant to remain inside the residence. When the probation officer returned to the defendant's residence with a backup officer, the defendant was told that the backup officer was there to

---

[1] *Davis* and *Dunlap* are cases involving probationers instead of persons on PPS, but that difference does not affect our analysis in this case. *See, e.g.*, *Owens v. Board of Parole*, 113 Or App 507, 511, 834 P2d 547 (1992).

seize the marijuana plants, and the officers proceeded to the defendant's bedroom. *Id.* at 470. The defendant was cooperative and raised no objection to the backup officer going to his bedroom, but he did not expressly consent to the entry. On appeal, the defendant argued that he did not consent to the backup officer's entry into his bedroom, but the state contended that the defendant's acquiescence constituted consent as a matter of law. *Id.*

In addressing the arguments of the parties, we stated:

"The issue presented on appeal is whether defendant's failure to expressly consent to or refuse the search denied [the probation officer] the authority to conduct a search under the probation condition. Under Article I, section 9, a probation condition that requires a probationer to submit to searches does not constitute a self-executing, prospective consent by the probationer to a general warrantless search. Rather, it represents an agreement by the probationer to submit to reasonable searches by the probation officer. If the probationer refuses to submit to such a search, then the officer has no authority, *under the terms of the search condition*, to conduct a warrantless search. The refusal may, however, violate the terms of the probation and could provide grounds for revocation of the probation.

"Because the search condition does not constitute a waiver of the probationer's Article I, section 9, rights, the probationer is entitled to refuse to allow the search, and must be given a reasonable opportunity to do so."

133 Or App at 473-74 (citations omitted; emphasis in original).

We declined to hold in *Davis* that acquiescence is always a consent to search, but we held that it may constitute consent under certain circumstances. *Id.* at 474. We found those circumstances in *Davis*, because the defendant "knew that he had agreed to submit to reasonable searches by [the probation officer], upon penalty of revocation of his probation." *Id.* at 475. Further, about 30 minutes before the backup officer went into the defendant's bedroom, the defendant had shown the probation officer into his bedroom, thereby allowing himself to be caught with marijuana. Before the backup officer entered the bedroom, he and the probation officer had

talked to the defendant, at which time the defendant could have objected to the backup officer's entry into his bedroom. *Id.* at 476.

Based on those circumstances, we concluded:

"Under the circumstances of this case, we do not believe that defendant 'merely' acquiesced to a showing of police authority. *Rather, defendant did exactly what he was required to do to remain in compliance with the terms of his probation: He submitted to a reasonable search of his premises by his probation officer. Other than the pressure on defendant not to violate the terms of his probation, there was nothing coercive about the circumstances.* Accordingly, after evaluating defendant's acquiescence to the officers' actions in the light of the circumstances, we conclude that defendant's actions constituted consent to the search and seizure conducted by [the probation officer]."

*Id.* at 476 (emphasis added).

In *Dunlap*, the defendant was on probation for sex offenses. As a condition of his probation, he was required to submit his person and property to search at the request of his probation officer if the officer had reasonable grounds to believe evidence of a violation would be found. 215 Or App at 48. Based on a polygraph taken by the defendant, his probation officer believed that the defendant was viewing pornography on the Internet in violation of his probation. *Id.* at 49. The probation officer asked the defendant to meet him at the probation officer's office. In a small room, with another probation officer present, the defendant verbally consented to a search of his home. The defendant was not told that he would be arrested if he refused to consent to the search. *Id.* The defendant, his probation officer, and two other people from the probation office went to the defendant's residence, where they met a city police officer, who had obtained the defendant's written consent to search. After the consent was signed, a computer belonging to the defendant was seized. It contained evidence that the defendant had been viewing pornography in violation of his probation. *Id.* The trial court found that the defendant's consent was voluntary and that there were no compelling circumstances that affected the defendant's consent.

In that case, we reasoned that

> "defendant contend[ed] that his agreement to consent to the search as a condition of his probation did not constitute a waiver of his Article I, section 9, rights and that, instead, whether he voluntarily consented depends on whether he believed the search to be inevitable, whether he was given an opportunity to decline consent, and whether he believed that he would be arrested if he declined to consent. He further argues that consent given to avoid revocation of probation is involuntary as a matter of law."

*Dunlap*, 215 Or App at 52.

The state countered that coercion is present only when a defendant exercises his constitutional privilege to refuse consent to a search, and the defendant did not do so at the time of his consent. We framed the issue on appeal as follows:

> "In determining whether a probationer who was subject to a condition of probation that required him to submit to a search voluntarily consented to a search, we consider whether the probationer was effectively denied a reasonable opportunity to refuse the search or whether the environment was sufficiently coercive to preclude him from doing so."

*Id.* at 54.

Evidence in the record supported the trial court's findings that the defendant, when asked to consent to the search, stated, "Okay, fine," and that he signed a consent-to-search form. Those facts demonstrated that the defendant had an opportunity to refuse consent to search. *Id.* We found nothing in the record that showed that the circumstances surrounding the defendant's consent was coercive, and, in addressing the defendant's reference to his testimony, we stated:

> "Defendant points to his testimony at trial that he felt compelled to consent by [the probation officer's] silence and his body language in response to defendant's inquiry regarding whether he had a choice to consent, and by what he describes as his reasonable belief that he would immediately be arrested if he declined to consent. Even assuming that [the probation officer's] demeanor was as described by

defendant, it was not sufficiently coercive to render his consent to search involuntary. And, as in *Davis*, the 'pressure' not to violate the conditions of his probation also was not sufficient."

*Id.* at 55.

As found by the trial court in the present case, before Poitras searched defendant, Poitras called Fertick so that defendant could talk to him, because defendant did not believe he had a PPS condition requiring him to consent to search. The trial court found that, upon being told by Fertick during the phone call that he had a PPS search condition, defendant threw up his hands and told Poitras that he could search him. Those facts show that defendant was given a reasonable opportunity to talk to Fertick before Poitras searched him. Further, they demonstrate that there was no coercive environment. Defendant knew that he could refuse to submit to a search and, in fact, had refused on previous occasions when Poitras had asked for permission to search him. Although Fertick testified that he would have had defendant arrested if defendant had refused to consent to the search, the record does not show that defendant was told he would be arrested, and there is nothing to show that defendant believed a search was inevitable. As in *Davis* and *Dunlap*, the facts in the record do not show a situation that was sufficiently coercive to have prevented defendant's consent from being voluntary.

Affirmed.