Argued and submitted June 27, affirmed December 19, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NOLEN BRICE BROCK,
*Defendant-Appellant.*

Morrow County Circuit Court
08CF072; A145257

295 P3d 89

Shawn Wiley, Chief Deputy Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant appeals a judgment of conviction for felon in possession of a firearm and possession of methamphetamine, contending that the trial court erred in denying his motion to suppress evidence found in a search of his residence by police officers and his probation officer. Defendant challenges the search on two grounds: first, that his consent to the search was not voluntary and, alternatively, that his consent was tainted by a prior unlawful entry. We conclude that defendant's consent was voluntary and that it did not derive from the earlier illegality. We therefore affirm.

Although some key facts were disputed at the motion to suppress hearing, the trial court resolved those disputes in favor of the state; the findings are supported by evidence in the record, so we are bound by them. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). Defendant and his roommate, Roubidoux, were on probation. Among the conditions of their probation were consent to home visits and a requirement to consent to a more intrusive home search if an officer had reasonable grounds to believe that evidence of a probation violation would be found.[1] Defendant and Roubidoux's probation officer, Wynn, decided to do a home visit and to request a search based on the facts that (1) defendant had failed four urinalyses, (2) defendant had been driving without a license, (3) Roubidoux had not been in compliance with her treatment, and (4) a confidential informant had reported to her that methamphetamine was being manufactured at defendant and Roubidoux's residence.

---

[1] The specific conditions of defendant's probation are not contained in the record. However, ORS 137.540 provides, in part:

"(1) The court may sentence the defendant to probation subject to the following general conditions unless specifically deleted by the court. The probationer shall:

"*****

"(h) Permit the parole and probation officer to visit the probationer or the probationer's work site or residence and to conduct a walk-through of the common areas and of the rooms in the residence occupied by or under the control of the probationer.

"(i) Consent to the search of person, vehicle or premises upon the request of a representative of the supervising officer if the supervising officer has reasonable grounds to believe that evidence of a violation will be found *****."

On the day in question, defendant and Roubidoux attended a probation class. When it ended, Wynn informed them that she intended to do a home visit. Each responded, "Alright"; neither objected. Because neither defendant nor Roubidoux had a valid driver's license, Wynn transported them to their house in the back of a police car. Defendant's and Roubidoux's cell phones had been surrendered at the beginning of the probation class and had not been returned to them. While in the car, Wynn asked defendant if there was anything at his house that would cause another probation violation, and defendant responded that he had marijuana in his bedroom in a dresser drawer.

When they arrived at the house, defendant, Roubidoux, and Wynn were met by four other probation officers and five law enforcement officers. Wynn had alerted the officers because she planned to ask defendant for his consent to search the residence; apparently, she knew that the prior consent to a home visit did not also encompass a more intrusive consent to search the private areas of a residence. *State v. Guzman*, 164 Or App 90, 96-97, 990 P2d 370 (1999), *rev den*, 331 Or 191 (2000). She also had safety concerns; past efforts to enter the house had been thwarted, and Wynn was concerned about the presence of dangerous dogs, weapons, and other felons at the house.

The front door was locked. Roubidoux did not have a key to the deadbolt, and no one answered in response to knocking. Roubidoux indicated that she sometimes entered the house through a window into defendant's bedroom, and she offered to gain entrance that way. For safety reasons, Deputy Wilson declined her offer and went through the window himself. Wilson walked through defendant's bedroom to open the front door, which took about 10 seconds. After the front door was opened, Wynn asked defendant to show her the marijuana he had told her about. Defendant took her to the bedroom, but when he opened the box in his dresser drawer, the marijuana was not there. Wynn told defendant that she had reasonable grounds to search and asked defendant, "Do I have consent to search?" Defendant said, "Yes." Wilson, who was also present, then searched the

attic and discovered defendant's girlfriend hiding there.[2] She showed Wilson where she had hidden marijuana and other contraband and told him that it belonged to defendant. Once back downstairs, Wilson asked defendant for consent to search the house and garage, and he said, "Okay." During the subsequent search, the officers discovered additional incriminating evidence. Defendant was charged with possession of a precursor substance with intent to manufacture a controlled substance, ORS 475.967(1), felon in possession of a firearm, ORS 166.270(1), possession of methamphetamine, ORS 475.894, and frequenting a place where controlled substances are used, ORS 167.222.

At the suppression hearing, Wynn, Wilson, and another officer, Kik, testified to the above facts. The court concluded that Wilson's entry through the window was unlawful because Roubidoux lacked actual authority to consent to entering defendant's bedroom, but that suppression was not necessary because (1) defendant voluntarily consented to the search of the house and (2) defendant's consent was not tainted by the prior police illegality. Defendant entered a conditional plea to the charges of felon in possession of a firearm and possession of methamphetamine, reserving his right to appeal, ORS 135.335(3), and the other charges were dismissed.

On appeal, defendant reiterates his arguments from below. Because the state does not challenge the trial court's ruling that the initial entry into the house was unlawful, our inquiry focuses on whether defendant's subsequent consent to search was voluntary and, if so, whether suppression is nonetheless necessary because defendant's consent was tainted by the prior unlawful police conduct.

A warrantless search violates Article I, section 9, of the Oregon Constitution unless justified by an exception to the warrant requirement; consent is one such exception.[3] *State v. Dunlap*, 215 Or App 46, 53, 168 P3d 295 (2007).

---

[2] Defendant does not contend that, when he gave consent to Wynn, he did not also give it to Wilson.

[3] Defendant argues that his consent was involuntary under Article I, section 9, of the Oregon Constitution. He does not develop a separate argument under the Fourth Amendment to the United States Constitution.

Where the state relies on a defendant's consent to validate a warrantless search, the state must prove by a preponderance of the evidence that the defendant's consent was voluntary. *Id.* The test for voluntariness is whether, under the totality of the circumstances, the consent was given by an act of a defendant's free will, as opposed to resulting from express or implied coercion. *Id.*

Under Article I, section 9, a probation condition requiring a probationer to consent to a home visit is not the same as a consent to search; the latter is more intrusive and is conditioned on the existence of "reasonable grounds to believe that evidence of a violation will be found." ORS 137.540(h) and (i). Further, a consent to search is not self-executing; if a probationer refuses to consent, the officer has no authority under the probation condition to search, although the probationer may be subject to a sanction for violating the condition. *Dunlap*, 215 Or App at 54. In determining whether a probationer who was subject to a condition of probation that required him to submit to a search voluntarily consented to a search, we consider whether the probationer was effectively denied a reasonable opportunity to refuse the search or whether the environment was sufficiently coercive to preclude him from doing so. *Id.* In reviewing the voluntariness of defendant's statements, we are bound by the trial court's findings of historical fact if the evidence supports them. *Id.*

Here, defendant asserts that the totality of circumstances—he was transported home by his probation officer, he was prevented from using his cell phone during the car ride, there were nine other officers at the house, and one officer other than Wynn had entered the house before he granted consent to search—negated the voluntariness of his consent.[4] Additionally, defendant contends that, even though he was on probation and was required as a general condition of his probation to consent to searches if there were, as here, reasonable grounds to suspect a violation, his

---

[4] It is unclear from defendant's brief whether he is also arguing that his initial consent to the home visit (while at the probation class) was involuntary; rather, the focus of defendant's assignment of error is that his subsequent consent to search the house (after the police had entered the house) was involuntary.

consent was not voluntary because he was not granted a reasonable opportunity to refuse.

Defendant argues that this case is analogous to *State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990), where we held that a defendant's consent was not voluntary. In that case, a police officer told the defendant that he was at her residence "to pick up the marijuana plants that she was growing" and that he "wanted to do it as calmly [and] efficiently as possible." *Id.* at 649 (internal quotation marks omitted; brackets in original). We held that the officer's statement could not be characterized as a request for consent:

> "The officer stated that 'he was there' to pick up the marijuana and 'he wanted' to do it calmly. The words used in the first phrase are unconditional; they do not invite a response other than acquiescence. In contrast, the words in the second phrase are supplicatory and do invite a response. Read together, the officer's statement told defendant that she had no choice whether a search would occur; her only option was whether the search and seizure was to be 'calm and efficient.' Defendant merely chose the option favoring calmness and efficiency * * *."

*Id.* at 652.

The circumstances of this case are distinguishable from *Freund*. Here, Wynn testified that, after defendant showed her the empty box in his bedroom, she asked defendant, "Do I have consent to search?," and he answered, "Yes." Wynn stated that, if defendant had not given consent, "I would * * * have ceased and desisted, because I requested a search, [defendant] would have been taken into custody at that time for refusing a search, and we would have cleared the residence." Officer Kik also testified that Wynn asked defendant, "Do you give us consent to go ahead and search your residence?" and defendant said, "Yes, you can search. Everything in the home is mine."[5]

Based on defendant's statements, we conclude that his consent was not mere acquiescence to a thinly veiled

---

[5] Although defendant denied that he made any statements to Wynn granting permission to search, the trial court concluded that the weight of the evidence was that defendant made the statements attributed to him by Wynn and Kik, and we are bound by the court's historical findings of fact. *Dunlap*, 215 Or App at 54.

demand. Nor was the environment so coercive as to preclude defendant from refusing to consent. Wynn had been defendant's probation officer for two years, and defendant was familiar with the conditions of his probation. He had experienced past home visits while on probation. He was calm and collected during the search; the situation was not hostile, and no weapons were displayed. Although 10 officers were present for safety reasons, only one of the five probation officers was armed and four of the law enforcement officers waited across the road from the house until about the time consent was obtained. There was no evidence of any threats or promises made to defendant. Based on the totality of circumstances, we conclude that defendant's consent was an act of free will, not the product of coercion; thus it was voluntary under Article I, section 9.[6]

Consent to a search is not valid, however, if it derived from a prior violation of a defendant's constitutional rights. *Hall*, 339 Or at 21. Defendant contends that the consent in this case derived from the unlawful entry through defendant's bedroom window. In determining the relationship between consent and prior unlawful police conduct, we follow the Supreme Court's analysis in *Hall*:

> "[T]his court has rejected the notion that evidence is rendered inadmissible under Article I, section 9, simply because it was obtained after unlawful police conduct or because it would not have been obtained 'but for' unlawful police conduct. Instead, as this court recently explained in *State v. Johnson*, 335 Or 511, 520-21, 73 P3d 282 (2003), after a defendant establishes the existence of a minimal factual nexus—that is, at minimum, the existence of a 'but for' relationship—between the evidence sought to be suppressed and prior unlawful police conduct, the state nevertheless may establish that the disputed evidence is admissible under Article I, section 9, by proving that the evidence did not derive from the preceding illegality. To make that showing, the state must prove that either (1) the police inevitably would have obtained the disputed evidence

---

[6] Although, as noted above, defendant develops no argument under the United States Constitution, we note that the test under the Fourth Amendment for the voluntariness of consent to search is "essentially the same" as the test under Article I, section 9. *See State v. Ry/Guinto*, 211 Or App 298, 309, 154 P3d 724, *rev den*, 343 Or 224 (2007) (citing *Schneckloth v. Bustamonte*, 412 US 218, 248-49, 93 S Ct 2041, 36 L Ed 2d 854 (1973)).

through lawful procedures even without the violation of the defendant's rights under Article I, section 9; (2) the police obtained the disputed evidence independently of the violation of the defendant's rights under Article I, section 9; or (3) the preceding violation of the defendant's rights under Article I, section 9, has such a tenuous factual link to the disputed evidence that that unlawful police conduct cannot be viewed properly as the source of that evidence."

339 Or at 25 (some citations omitted). Thus, at the outset, to prevail on his claim on the ground that his consent was tainted by Wilson's unlawful entry through the bedroom window, defendant must first establish that, had that illegality not occurred, he would not have given Wynn consent to search when, a few moments later, she asked for it. The gist of defendant's argument is that, but for the illegal entry, Wynn would not have gained admission to the house and been in a position to ask for consent. That is a familiar scenario in cases involving consent to search after an unlawful *stop*, where it is clear that, but for the stop, the officer and the defendant would never have interacted.

This situation is different. We fail to see how admission to the house had any bearing on defendant's consent. Wynn could just as well have asked for consent to search while she and defendant were outside the house, and the fact that she did not was pure happenstance; neither Wynn nor Wilson observed anything inculpatory between Wilson's entry and Wynn's request for consent to search. Further, Wynn testified (and the court found) that Wynn intended to ask for consent to search long before Wilson climbed in to defendant's bedroom. Perhaps if defendant had argued, and presented evidence, that Wynn would never have gained admission to the house without the illegal entry—that, in other words, Wynn would have had consent but no opportunity to exercise it—defendant could have established the "minimal nexus" required to shift the burden to the state to prove independent source, inevitable discovery, or attenuation. But defendant made no such argument. In fact, there is evidence to the contrary; defendant had already consented to a home visit that would have permitted Wynn entry, and Roubidoux testified that one of the police officers told her that, if entry could not

be gained through the window, the officer was prepared to kick in the door. In sum, defendant did not establish any nexus, even a minimal one, between the unlawful entry and his consent. For that reason, and because we find that his consent was voluntary, we affirm.

Affirmed.