Submitted December 22, 2020, affirmed March 10; on appellant's petition for reconsideration filed April 5, reconsideration allowed by opinion May 26, 2021 See 311 Or App 756, ___ P3d ___ (2021)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL LOVE-FAUST,
aka Michael Love Faust,
aka Michael Faust-Love,
aka Faust Michael Love,
*Defendant-Appellant.*

Douglas County Circuit Court
19CR19907, 18CR59898;
A171278 (Control), A171279

483 P3d 45

In these consolidated criminal cases, defendant appeals from a judgment convicting him of unlawful possession of methamphetamine, ORS 475.894, and from a judgment revoking his probation on an earlier first-degree failure to appear conviction, ORS 162.205. Defendant argues that the trial court erred in denying his motion to suppress because, in his view, he was in compelling circumstances that required *Miranda* warnings when his probation officer (PO) confronted him on the street with evidence that he had violated his probation and then requested consent to search his person. Defendant further contends that, even though *Miranda* warnings were eventually given, he nonetheless did not validly waive his right against self-incrimination. *Held*: The trial court did not err in denying defendant's motion to suppress. Under the totality of the circumstances, defendant was not in compelling circumstances when his PO approached him on the street, asked him about suspected probation violations, and requested consent to search.

Affirmed.

Ann Marie Simmons, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Anna Belais, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In these consolidated criminal cases, defendant appeals from a judgment convicting him of unlawful possession of methamphetamine, ORS 475.894, and from a judgment revoking his probation on an earlier first-degree failure to appear conviction, ORS 162.205. Defendant argues that the trial court erred in denying his motion to suppress because, in his view, he was placed in compelling circumstances that required *Miranda* warnings at the outset of the encounter. Defendant further contends that, even though *Miranda* warnings were eventually given, he nonetheless did not validly waive his right against self-incrimination. For the reasons explained below, we affirm.

We review the trial court's denial of a defendant's motion to suppress for legal error and are bound by the court's findings of historical fact if there is any constitutionally sufficient evidence in the record to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017); *State v. Phillips*, 302 Or App 618, 619, 459 P3d 909, *rev den*, 366 Or 552 (2020). We set out the facts consistently with the trial court's explicit and implicit findings and its decision denying the motion to suppress. *State v. Shaff*, 343 Or 639, 641, 175 P3d 454 (2007).

The relevant facts are not in dispute. In 2018, defendant pleaded guilty to first-degree failure to appear and was placed on 24 months of probation. Among the conditions of defendant's probation were requirements that he (1) complete a substance-abuse treatment program; (2) not use or possess controlled substances; (3) not frequent places where controlled substances are used and sold; (4) not associate with people who use or possess controlled substances; and (5) consent to a search of his person upon the request of his parole and probation officer (PO) if his PO had reasonable grounds to believe that evidence of a probation violation would be found.

In March 2019, defendant missed an appointment with Woods, his PO. Later that morning, Woods learned that defendant had also missed a meeting with his substance-abuse treatment counselor. Therefore, Woods and another PO, McManus, decided to look for defendant; they also

requested two additional POs to accompany them to help search for defendant. They all were wearing PO uniforms, which were described as flak jackets over polo shirts with visible handcuffs and sidearms. Woods used defendant's GPS monitoring bracelet to pinpoint his general location and, after approximately 15 minutes of searching, Woods sent a voice message to defendant's GPS monitoring bracelet, asking defendant to contact Woods immediately.

Eventually, the officers found defendant as he was coming out of a house in Roseburg. Woods approached defendant on the street and began asking him why he had missed their meeting and why he had missed treatment that morning. Woods also asked defendant questions about the house that defendant had just come from and about who was in the house. Initially, only McManus was with Woods when Woods approached defendant, but the two other POs joined the group eventually. McManus and one of the POs who joined stood approximately eight to 10 feet away from Woods and defendant, while the other PO stood approximately five feet from them. While Woods was talking to defendant, one of the POs contacted the Douglas Interagency Narcotics Team and learned that the house that defendant had been in was a "known drug house." The PO relayed that information to Woods. After further questioning, defendant gave Woods the name of an individual who had been inside the house with him. Woods recognized the name of the individual as someone who was a "known drug user" with a "long history of supervision." Woods pulled up the individual's booking photo, and defendant confirmed it was the same person.

At that point, Woods "explained the situation to [defendant]," including what brought him to talk with defendant. Woods shared with defendant the information about the house that he had received from the other POs, as well as Woods's own history with the individual who had been inside the house. Believing that defendant had violated his supervision conditions, Woods asked defendant for consent to search his person. Defendant consented to a search, and Woods found a syringe in defendant's left pants pocket and a "Marlboro cigarette pack with a baggie inside of it." Woods observed that "the plunger on the syringe was pulled back" and suspected that it contained a controlled substance. At

that point, Woods stopped the search, read defendant his *Miranda* rights, and handcuffed him. Once defendant was handcuffed, Woods finished his search of defendant's person and contacted Roseburg police to report a suspected new crime. Woods then asked defendant for consent to search his jacket, and defendant agreed and told Woods that he would find another syringe and a spoon with residue in the jacket.

Defendant was charged with one count of unlawful possession of methamphetamine and one count of unlawful possession of heroin. Before trial, defendant moved to suppress all evidence obtained as a result of the seizure and search, arguing that the warrantless search was presumptively unreasonable, that Woods interrogated him in compelling circumstances without providing *Miranda* warnings, and that the late *Miranda* warnings did not cure the prior illegality. At the evidentiary hearing, defendant also argued that the baggie inside the cigarette pack, which tested positive for heroin, was inside a closed container and should be suppressed under Article I, section 9, of the Oregon Constitution. In response, the state contended that defendant was never questioned under compelling circumstances and that defendant voluntarily consented to a search of his person.

The trial court denied defendant's motion to suppress as to the syringes and the statements made by defendant, but granted suppression as to the baggie in the cigarette pack.[1] Ruling from the bench, the court determined that there were reasonable grounds for PO Woods "to contact [d]efendant and to ask for consent to search his person." The court also concluded that there was no indication that "there was interrogation occurring or, specifically, custodial interrogation or, frankly, anything requiring [defendant] to admit to the commission of crimes prior to the discovery of a loaded syringe." Finally, the court found that there was no delay in Woods providing *Miranda* warnings: Defendant's consent to search came "prior to the discovery" of the loaded

---

[1] The trial court agreed with defendant's argument that the baggie was in a closed container and that the opening of the closed container violated Article I, section 9. As a result of that ruling, the state dismissed the unlawful possession of heroin charge. The trial court's ruling with respect to the baggie is not at issue in this appeal.

syringe and it was the discovery of the loaded syringe that elevated defendant's "behavior to the level of criminal activity, not just probation violations." Defendant then waived his right to a jury trial, and the court found him guilty of unlawful possession of methamphetamine after a trial to the court.

On appeal, defendant renews his argument that he was in compelling circumstances and that the belated *Miranda* "warnings were not effective for defendant to validly waive the right against self-incrimination." Specifically, defendant asserts that Woods "confronted him about evidence that he had violated probation and used that evidence as leverage to request consent to search defendant for evidence of drug use and possession." Further, defendant acknowledges that Woods did not tell him that he was not free to leave, but asserts that a reasonable person in defendant's position would have felt compelled to answer Woods's questions, because Woods had already sent defendant a message through his GPS bracelet and Woods was accompanied by three other uniformed and armed probation officers.

In response, the state reasserts that defendant was never placed in compelling circumstances. Although Woods was accompanied by three other officers, the state argues that "the trial court expressly found" that "none of the other officers interacted with defendant at all." The state further argues that Woods "did not exert sufficient pressure on defendant to render the circumstances of the encounter compelling" and cites several cases for the proposition that "questions that merely suggest that an officer is concerned about possible 'illegal activity' do not usually create compelling circumstances." *See State v. Heise-Fay*, 274 Or App 196, 204-05, 360 P3d 615 (2015); *State v. Stone*, 269 Or App 745, 751, 346 P3d 595 (2015). In addition, the fact that defendant could have been arrested for violating his probation, according to the state, did not place defendant in compelling circumstances, because like the defendant in *State v. Dunlap*, 215 Or App 46, 168 P3d 295 (2007), defendant was never told "that he would be penalized in any way for invoking his privilege against self-incrimination, or for refusing consent to search." The state further argues that, even if Woods's interaction with defendant violated Article I, section 12,

of the Oregon Constitution, suppression was not required because the *Miranda* warnings sufficiently attenuated any illegality.

We start by addressing defendant's argument that he was in compelling circumstances. Article I, section 12, provides, in part, that "[n]o person shall be * * * compelled in any criminal prosecution to testify against himself." To protect a person's right against self-incrimination, "police officers must provide *Miranda* warnings to a suspect before interrogating that suspect if the suspect either is in full custody or in compelling circumstances." *Phillips*, 302 Or App at 623 (internal quotation marks omitted). Compelling circumstances exist when, viewing the totality of the circumstances, a reasonable person in the defendant's position would feel compelled to answer an officer's questions. *Dunlap*, 215 Or App at 57. To determine if there were compelling circumstances, we look to whether the questioning occurred in a "police-dominated atmosphere." *State v. Roble-Baker*, 340 Or 631, 641, 136 P3d 22 (2006). We examine several nonexclusive factors to make that determination: "the location of the encounter, the length of the encounter, the amount of force exerted on the suspect, and the suspect's ability to terminate the encounter." *State v. Turnidge (S059155)*, 359 Or 364, 402, 374 P3d 853 (2016), *cert den*, ___US ___, 137 S Ct 665 (2017). Those nonexclusive factors are not applied mechanically; rather, a court should consider the totality of the circumstances to determine if compelling circumstances existed. *Id*.

As an initial matter, defendant does not assert that the location of the encounter made the circumstances more compelling. Similarly, defendant does not argue that the length of the encounter supports a determination that the circumstances were compelling, nor did the trial court make any findings as to how long the encounter lasted. Thus, we consider those factors neutral.

In arguing that the circumstances in this case were compelling, defendant principally relies on the number of probation officers present, Woods's use of evidence that defendant violated probation "as leverage to request consent to search" defendant's person, and his inability to terminate the encounter.

Considering the factors under the totality of the circumstances, we conclude that defendant was not in compelling circumstances when Woods approached defendant on the street and asked him about suspected probation violations. First, although there were three other officers besides Woods present during the encounter, the lack of contact between the officers and defendant weigh against defendant's argument that he was in compelling circumstances. *See State v. Bush*, 203 Or App 605, 611, 126 P3d 705 (2006) (noting that the circumstances were not sufficiently compelling where there "were three officers on the scene, but the statements at issue were made during a one-on-one exchange" between the defendant and one officer, and the record was "bereft of any evidence" that the atmosphere was oppressive or coercive). In this case, the three other officers stood several feet away from defendant, and the trial court's unchallenged finding was that there was "no indication that a single one of those other Probation Officers said anything or questioned [defendant] in any way."

Second, the manner in which Woods confronted defendant on the street with evidence of potential probation violations did not give rise to compelling circumstances. Before addressing why, we pause to acknowledge that "the circumstances surrounding a probation officer's request or demand to search are different than in the police/citizen context, where the citizen has no obligation to submit to a warrantless search." *State v. Davis*, 133 Or App 467, 475, 891 P2d 1373, *rev den*, 321 Or 429 (1995). Although a probationer may refuse to submit to a search under Article I, section 9, that refusal may "violate the terms of the probation and could provide grounds for revocation of the probation." *Id.* at 473. Given that predicament, "the environment surrounding the probation search may be sufficiently coercive so as to preclude the probationer from raising an objection." *Id.* at 475. Accordingly, we generally assess whether confronting a probationer with evidence of probation violations creates compelling circumstances in the same way we would assess a police officer confronting a citizen with evidence of criminal activity. *See Phillips*, 302 Or App at 627 ("It is settled that circumstances do not become compelling simply because a suspect knows that officers have information

that he or she may have committed a crime, or because officers suggest that possibility."). Ultimately, "what matters is not whether evidence of guilt was apparent to the suspect; rather, it is whether the officers used that evidence in a coercive manner." *Shaff*, 343 Or at 650.

Here, the record does not reflect that Woods's questioning constituted a coercive use of probation-violation evidence. Woods did not communicate that there would be consequences to defendant's probation status if he invoked his constitutional privilege against self-incrimination. *See Dunlap*, 215 Or App at 57 (questioning of the defendant in PO's office where another PO stood at the door about potential criminal activity that would have also been a violation of the defendant's probation, and later questioning at the defendant's home, did not create compelling circumstances where "nothing in the record indicate[d] that the police told defendant that he would be penalized in terms of his probation status for invoking his constitutional privilege against self-incrimination"). In addition, as the trial court determined, "there was nothing coercive about [Woods's] language" and nothing "coercive about his demeanor." Even though Woods believed that defendant had violated some of the terms of his probation and Woods believed that he had reasonable grounds to arrest defendant at the outset of their encounter, there is no indication that Woods used that information against defendant. He did not raise his voice, engage in a show of force, threaten, or pressure defendant to answer his questions. *Cf. Heise-Fay*, 274 Or App at 207 (concluding that once the officer confronted the defendant "with evidence that she had committed a crime, [the officer's] statement that he had no intention of taking her into custody if she was honest and cooperative would have indicated to a reasonable person that it was within [the officer's] discretion to arrest her and that he was strongly considering doing so, unless she was honest and cooperative" (emphasis omitted)).

Further, although confronting defendant with information that the house that he came from was a known drug house and that the person who he was with was a known drug user may have suggested to defendant that Woods was also concerned about potential drug activity, relaying such concerns alone—and more to the point, under the totality

of the circumstances presented in this case—do not create compelling circumstances. *See Stone*, 269 Or App at 752-53 (summarizing cases and explaining that compelling circumstances have been created where officers communicated "that they believed each defendant had committed a crime, that they had probable cause to arrest, and that they intended to make an arrest or were strongly weighing the possibility of making an arrest"); *Heise-Fay*, 274 Or App at 206 (summarizing cases where compelling circumstances did not exist "when an officer had asked open-ended questions during an investigation that were neither coercive nor based on an assumption of the defendant's guilt"). Therefore, the probation-related questions leading up to asking defendant for consent to search his person did not give rise to compelling circumstances.

Similarly, we reject defendant's contention that he was in compelling circumstances because he could not terminate the encounter. As an initial matter, it is not clear from the record that defendant subjectively believed that he could not terminate the encounter. The trial court did not make an explicit finding on that issue and this is not a situation in which we would assume that the trial court implicitly made such a finding. *See Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015) (explaining that, although a reviewing court will presume a trial court resolved a factual dispute consistently with its ultimate conclusion, the presumption has its limits; that is, "[i]f an implicit factual finding is not necessary to a trial court's ultimate conclusion or is not supported by the record, then the presumption does not apply"). In any event, even if defendant subjectively believed that he could not terminate the encounter, consistent with the reasons described above with respect to the probation-related questions leading up to the request for consent, we reject the argument that defendant's inability to terminate the encounter created compelling circumstances under the totality of the circumstances presented by this case.

To be sure, we recognize that each of the circumstances highlighted by defendant's arguments taken individually—or when taken together as the analytical framework requires—describe a potentially unsettling situation, especially considering that there were multiple

POs, who were armed and wearing flak jackets. The constitutional test for compelling circumstances, however, focuses on whether the officers have created "the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract." *Roble-Baker*, 340 Or at 641. That was not the case here. As explained above, we conclude that, under the totality of the circumstances, defendant was not in compelling circumstances for constitutional purposes and therefore *Miranda* warnings were not required by Article I, section 12, when Woods questioned defendant. Given that conclusion, we necessarily reject defendant's argument that his post-*Miranda* statements and evidence must also be suppressed.[2] *See Dunlap*, 215 Or App at 58 (so stating). Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.

---

[2] Given our disposition we need not reach the state's attenuation argument.