478 October 19, 2023 No. 29

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

v.

DEBORAH LYNN REED,
*Petitioner on Review.*
(CC 19CR12088, 18CR64481)
(CA A170999, A171000) (SC S069360)

On review from the Court of Appeals.*

Argued and submitted December 1, 2022.

Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Peenesh Shah, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, Bushong, James, and Masih, Justices.**

DUNCAN, J.

The decision of the Court of Appeals is reversed. The judgments of the circuit court are reversed, and the cases are remanded to the circuit court for further proceedings.

_____

* Appeal from Lincoln County Circuit Court, Sheryl Bachart, Judge. 317 Or App 453, 505 P3d 444 (2022).

** Balmer, J., retired December 31, 2022, and did not participate in the decision of this case. Walters, J., retired December 31, 2022, participated at oral argument, but did not participate in the decision of this case. Nelson, J., resigned February 25, 2023, and did not participate in the decision of this case.

**DUNCAN, J.**

Defendant moved to suppress evidence resulting from a police interrogation. In her motion, defendant asserted that police officers violated Article I, section 12, of the Oregon Constitution when they interrogated her in compelling circumstances without first advising her of her *Miranda* rights. The trial court denied the motion, ruling that the interrogation did not occur in compelling circumstances. The case proceeded to a bench trial, and the trial court convicted defendant of multiple drug offenses. Thereafter, defendant's probation in an earlier case was revoked based in part on the evidence resulting from the interrogation and her new convictions.

Defendant appealed both the judgment of conviction and the judgment revoking her probation, challenging the trial court's conclusion that the interrogation did not occur in compelling circumstances. The appeals were consolidated, and the Court of Appeals affirmed both judgments. *State v. Reed*, 317 Or App 453, 455, 505 P3d 444 (2022). On review, we reverse and remand. As we explain below, the interrogation occurred in compelling circumstances, specifically:

- defendant was on probation and subject to conditions that, among other things, required her to obey all laws, report to her probation officer, answer all reasonable inquiries by her probation officer, and consent to searches at her probation officer's request if he had reasonable grounds to believe that evidence of a probation violation would be found;

- two police officers interrupted a mandatory meeting between defendant and her probation officer in the probation officer's office;

- defendant was not free to leave the office without her probation officer's permission, and, because the office was in a secured building, she could not exit the building on her own;

- the police officers told both defendant and the probation officer that they wanted them to stay in the office; and the police officers accused defendant of new crimes.

Altogether, those circumstances were compelling. Therefore, the police officers were required to advise defendant of her *Miranda* rights before interrogating her. Because they failed to do so, evidence resulting from the interrogation must be suppressed.

## I. HISTORICAL AND PROCEDURAL FACTS

The interrogation at issue in this case occurred while defendant was on probation and subject to statutory probation conditions, including that she "[o]bey all laws," "[r]eport as required and abide by the direction of the supervising officer," "[p]romptly and truthfully answer all reasonable inquiries by the Department of Corrections or a county community corrections agency," and "[c]onsent to the search of person, vehicle or premises upon the request of a representative of the supervising officer if the supervising officer has reasonable grounds to believe that evidence of a violation will be found." ORS 137.540. If defendant's probation officer had reasonable grounds to believe that defendant had violated the conditions of her probation, he could arrest her immediately. *See* ORS 133.239(2) (authorizing a probation officer to arrest a probationer); ORS 137.545(2) (providing that a probationer may be arrested without a warrant for violating any condition of probation); ORS 144.350(1)(a) (authorizing a probation officer to order a probationer's arrest "upon being informed and having reasonable grounds to believe" that the probationer violated the conditions of probation).[1] If a court determined that defendant had violated the conditions of her probation, it could revoke her probation and sentence her to 19 to 20 months in prison.

On the day of the interrogation, defendant was meeting with her probation officer, Eoff, in a small room at the probation office. Defendant's attendance at the meeting was mandatory. She could not leave the meeting without Eoff's permission. Moreover, because the probation office was secured, defendant was not free to move around the office alone. She had to be escorted at all times.

___

[1] A probation officer may lawfully arrest a probationer upon a lesser quantum of proof than would be required for a police officer to arrest someone. *See State v. Gulley*, 324 Or 57, 65, 921 P2d 396 (1996) ("'[R]easonable grounds' means a quantum of information that is greater than that which would justify a 'stop,' but less than that required for 'probable cause.'").

Two police officers came to the room where defendant and Eoff were meeting. They asked defendant and Eoff if they could speak with them, and defendant and Eoff agreed. Eoff asked them if they wanted him to excuse defendant so that they could talk with her alone. They said no and that they wanted to talk to both defendant and Eoff. Eoff did not excuse defendant. Eoff had not finished his meeting with defendant, so defendant was not free to leave his office.

One of the police officers stood in the doorway, and the other slid past him and sat down in the room. The police officers did not advise defendant of her *Miranda* rights. Nor did they tell her that she could terminate their questioning.

The police officers confronted defendant. They told her that they "knew everything that was happening." Defendant was on probation for drug-related crimes, and the police officers told her that they "knew she was selling drugs again." They stated that they had information that she had sold drugs earlier that day. They also accused her of possessing drugs as they spoke. They demanded to know "how much she had on her." Defendant denied having drugs on her and stated that the officers could search her person and her purse. One of the officers asked defendant if he could search her car, and defendant gave him her keys. Defendant made incriminating statements. Then, about two minutes into the interrogation, the officer with defendant's keys left to search defendant's car. During the search, the officer discovered evidence of drug-related crimes.

Meanwhile, the other officer continued to interrogate defendant. In response to that part of the interrogation, defendant made additional incriminating statements and allowed the officer to search her phone and purse. Those searches resulted in the discovery of additional evidence of drug-related crimes.

The state charged defendant with manufacturing, delivering, and possessing heroin (Counts 1-3), and manufacturing, possessing, and delivering methamphetamine (Counts 4-6). Defendant moved to suppress evidence resulting from the police officers' interrogation on the ground that the officers had violated Article I, section 12, by

interrogating her in compelling circumstances without first advising her of her *Miranda* rights. In ruling on the motion, the trial court divided the interrogation into two parts: the part before the officer left to search defendant's car and the part after he left. The trial court denied the motion as to the first part of the interrogation but granted it as to the second.

Defendant waived her right to a jury trial, and the trial court convicted defendant of Counts 3-6. Based in part on the evidence resulting from the interrogation and defendant's conviction, defendant's probation was subsequently revoked.

Defendant appealed the judgments in both the criminal case and the probation case, challenging the trial court's denial of her motion to suppress the evidence resulting from the first part of the interrogation. The appeals were consolidated, and the Court of Appeals affirmed both judgments. *Reed*, 317 Or App at 455. On defendant's petition, we allowed review to address whether the circumstances surrounding the first part of the interrogation were compelling.[2]

## II.   DISCUSSION

Article I, section 12, of the Oregon Constitution provides, "No person shall be \*\*\* compelled in any criminal prosecution to testify against himself." It "guarantees a right to remain silent and a 'derivative or adjunct right to have the advice of counsel in responding to police questioning.'" *State v. Ward*, 367 Or 188, 190-91, 475 P3d 420 (2020) (quoting *State v. Turnidge*, 359 Or 364, 399, 374 P3d 853 (2016), *cert den*, 580 US 1070 (2017)). Police officers are required to inform individuals of those rights prior to interrogating them "in custody or otherwise compelling circumstances." *State v. McAnulty*, 356 Or 432, 454, 338 P3d 653 (2014), *cert den*, 577 US 829 (2015).

The Article I, section 12, requirement that police officers inform individuals of their rights prior to certain

---

[2] In the Court of Appeals, the state argued that, even if *Miranda* warnings were required and improperly withheld, defendant's voluntary consent to the search of her car was sufficiently attenuated from the constitutional violation such that evidence discovered in the car was nonetheless admissible. Because the state has not renewed that argument in this court, we do not address it.

interrogations is similar to, but broader than, the require-
ment under the federal constitution established in *Miranda
v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).
In *Miranda*, the United States Supreme Court held that
the Fifth Amendment to the United States Constitution
requires police officers to inform individuals of their right
to remain silent and their right to counsel before subjecting
them to custodial interrogation. *Id.* at 478-79. The purpose
of requiring police officers to provide that information—that
is, to give what are now known as *Miranda* warnings—is to
counter the coercive effects inherent in custodial interroga-
tions. *Id.* at 448. The Court recognized that custodial inter-
rogations can impair individuals' awareness of, and willing-
ness to assert, their rights. *Id.* at 449, 467. It explained that
police interrogations can involve a variety of coercive ele-
ments, including certain locations and interrogation tactics.
*Id.* at 445-55. It observed that modern interrogations tend
to involve psychologically coercive tactics rather than phys-
ically coercive ones. *Id.* at 448. And it further observed that
psychologically coercive tactics can make individuals less
aware of their rights and undermine their will to resist pres-
sures to waive them. *Id.* at 455, 465. The Court reviewed and
quoted police manuals describing tactics for investigators to
use when interrogating a person, *id.* at 448-56, including
conducting the interrogation at the investigator's office or
other location of the investigator's choosing, isolating the
person, proceeding as if the person's guilt is already an
established fact, giving false information, and keeping the
person "off balance, for example, by trading on his insecurity
about himself or his surroundings," *id.* at 455.[3] Such tac-
tics can "impair [a person's] capacity for rational judgment."

---

[3] Regarding the location of an interrogation, the *Miranda* court quoted one
manual as advising that, "'[i]f at all practicable, the interrogation should take
place in the investigator's office or at least in a room of his own choice'" to reduce
the subject's awareness of his rights and support he might have from family or
friends. 384 US at 449-50 (quoting Charles E. O'Hara & Gregory L. O'Hara,
*Fundamentals of Criminal Investigation*, 99 (1st ed 1956)). "'The subject should be
deprived of every psychological advantage. *** In his own office, the investigator
possesses all the advantages. The atmosphere suggests the invincibility of the
forces of the law.'" *Miranda*, 384 US at 449-50 (quoting O'Hara, *Fundamentals* at
99). Regarding the manner of interrogation, the Court noted that "the manuals
instruct the police to display an air of confidence in the suspect's guilt and from
outward appearance to maintain only an interest in confirming certain details.
The guilt of the subject is to be posited as fact." *Miranda*, 384 US at 450.

*Id*. at 465. They can "overcome free choice in producing a statement." *Id*. at 474; *id*. at 469 ("The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will" of the person being interrogated.).

The *Miranda* warnings inform individuals that they have the right to remain silent, that anything they say can and will be used against them in a court of law, that they have the right to have an attorney present during the interrogation, and that, if they cannot afford an attorney, one will be appointed for them on request before the interrogation. *Id*. at 479. The warnings are intended to inform individuals of their right to remain silent, assure them a continuous opportunity to exercise that right, and warn them of the consequences of waiving it. *Id*. at 467-69. They serve to counteract "the potentiality for compulsion" and ensure that, if an individual makes a statement during a custodial interrogation, the statement is "the product of free choice." *Id*. at 457. The warnings are necessary because the right to be free from compelled self-incrimination "is fulfilled only when the person is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will." *Id*. at 460 (internal quotation marks omitted). If the warnings are required before an interrogation but are not given, any statements resulting from the interrogation must be suppressed. *Id*. at 457 (holding that, even if statements might not have been found "involuntary in traditional terms," suppression was required where officers failed "to afford appropriate safeguards at the outset of the interrogation to insure that the statements were truly the product of free choice").[4]

---

More recently, in *State v. Jackson*, 364 Or 1, 430 P3d 1067 (2018), this court described interrogation strategies, some of which are similar to those described in *Miranda*. Specifically, it described the "Reid Technique," which involves "isolating a suspect in a small room to increase anxiety; confronting the suspect with accusations of guilt and emphasizing the strength of the evidence against the suspect; offering sympathy and justifications or rationalizations to allow the suspect to minimize the crime; and encouraging the suspect to see confession as a means of terminating the interview." *Id*. at 29.

[4] The *Miranda* Court summarized its holdings as follows:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the

Oregon law recognizes that circumstances other than custody can be coercive—that is, they can undermine an individual's ability or willingness to exercise their constitutional rights. Because those circumstances can have the effects that the *Miranda* warnings are intended to counter, Oregon law requires police officers to give *Miranda* warnings before interrogating an individual in those circumstances. *State v. Magee*, 304 Or 261, 266, 744 P2d 250 (1987) (Article I, section 12, "furnishes an independent basis" for requiring that police administer *Miranda* warnings). Thus, under Oregon law, police officers "are required to give *Miranda* warnings to persons *in custody* or otherwise *compelling circumstances*." *McAnulty*, 356 Or at 454 (emphasis added).

There is no bright-line rule under Oregon law for when circumstances are compelling for the purposes of Article I, section 12. This court has held that, "before questioning, police must give *Miranda* warnings to a person who is in full custody or in circumstances that create a setting which judges would and officers should recognize to be compelling." *State v. Roble-Baker*, 340 Or 631, 638, 136 P3d 22 (2006) (internal quotation marks omitted). Whether circumstances are compelling for the purposes of Article I, section 12, "does not turn on either the officer's or the suspect's subjective belief or intent; rather, it turns on how a reasonable person in the suspect's position would have understood

---

privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

384 US at 478-79. This court has described the warnings required by Article I, section 12, of the Oregon Constitution as "*Miranda*-like" warnings. *See, e.g.*, *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990). But, for ease of reference, in this opinion, we use the term "*Miranda* warnings" to refer to the warnings required by state and federal law. Because no warnings were given in this case, there is no need for us to determine whether there is any difference between the state and federal requirements.

[their] situation." *State v. Shaff*, 343 Or 639, 645, 175 P3d 454 (2007).

When determining whether a defendant's encounter with police officers was compelling, this court "has considered a host of factors," including: (1) the length of the encounter, (2) the location of the encounter, (3) the defendant's ability to terminate the encounter, and (4) the amount of pressure exerted on the defendant. *Roble-Baker*, 340 Or at 640-41. "Those factors are neither the exclusive factors that this court will consider, nor are they to be applied mechanically. Rather, in determining whether the police placed a defendant in compelling circumstances, this court will consider all the circumstances, and its overarching inquiry is whether the officers created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract." *Id.* at 641. The totality of the circumstances include whether the defendant could face administrative sanctions or other consequences if they did not cooperate. *See, e.g.*, *State v. Breazile*, 189 Or App 138, 146, 74 P3d 1099 (2003) (explaining that, because the question was "how a reasonable person *in defendant's position* would have understood the circumstances of his questioning[,] [d]efendant's status as a prisoner and his understanding of the rules governing his status [were] relevant in making that determination" (emphasis in original)); *see also State v. Shelby*, 314 Or App 425, 429, 497 P3d 772 (2021), *rev den*, 369 Or 209 (2022) (concluding that defendant, an inmate, was in compelling circumstances during a jail disciplinary hearing because defendant was not adequately informed that he did not have to attend the hearing and because defendant could have faced administrative sanctions as a result of the hearing); *State v. Heise-Fay*, 274 Or App 196, 208, 360 P3d 615 (2015) (explaining that the presence of DHS workers during police questioning added to the coercive implications of the encounter because "a reasonable person in defendant's situation would have been concerned that, if she was not 'honest and cooperative' and was arrested, DHS would take her children into protective custody").

Essentially, under Oregon law, *Miranda* warnings are required when there is a significant risk that conditions

created by the state could undermine a person's ability or willingness to assert their constitutional rights to remain silent and have counsel present during a police interrogation. *See Roble-Baker*, 340 Or at 641 (explaining that whether warnings were required before police questioning depends on whether the circumstances created the type of atmosphere that *Miranda* warnings were intended to counteract); *Miranda*, 384 US at 449, 467 (stating that the warnings serve to protect against the "potentiality for compulsion" and ensure that a defendant's statements are "the product of free choice"). The warnings are intended to help ensure that, if a person submits to interrogation, despite their right not to, the submission is a knowing and voluntary choice. In doing so, the warnings help ensure that any statements resulting from the interrogation are reliable.

The state bears the burden of proving that a defendant's unwarned statements were made under circumstances that were not compelling. *Roble-Baker*, 340 Or at 639. If *Miranda* warnings are not given when required, resulting evidence must be suppressed. *State v. Vondehn*, 348 Or 462, 476, 236 P3d 691 (2010) (explaining that the state may not use either physical evidence or incriminating statements derived from a violation of Article I, section 12, against defendant). Whether the circumstances were compelling is a question of law that we review for legal error, and we are bound by the trial court's findings of historical fact if there is any evidence in the record to support them. *Roble-Baker*, 340 Or at 633; *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

Having reviewed the relevant law, we return to the facts of this case. As we explain below, we conclude that the state failed to carry its burden of proving that defendant's unwarned statements were made in circumstances that were not compelling. As mentioned, whether the circumstances surrounding a defendant's interrogation are compelling depends on the totality of the circumstances, including, but not limited to, the length of the interrogation, the location of the interrogation, the defendant's ability to terminate the interrogation, and the pressure exerted on the defendant. *Roble-Baker*, 340 Or at 640-41. Here, the duration of the

interrogation was short, which weighs against a conclusion that the circumstances were compelling, but the other factors weigh in favor of a conclusion that the circumstances were compelling.

First, the interrogation took place in a police-dominated environment. Defendant was in a small room, alone with her probation officer and the two police officers. The room was in the probation office, which was secured, and, like a police station, served as the place of work for officers who, among other duties, investigate new criminal activity. *See Miranda*, 384 US at 449-50 (describing manuals that advise investigators to conduct interrogations in their offices because the location "suggests the invincibility of the forces of the law" (quoting Charles E. O'Hara & Gregory L. O'Hara, *Fundamentals of Criminal Investigation*, 99 (1st ed 1956))).

Second, defendant was not free to leave. Defendant was subject to a probation condition that required her to report to her probation officer, and she was attending a mandatory meeting with her probation officer. As a legal matter, she could not leave without his permission. As a practical matter, she could not leave without his assistance because she could not move around the probation office alone. When the two police officers came to the office, defendant's probation officer asked them if they wanted him to excuse defendant. They said no and that they wanted to talk to both the probation officer and defendant. Their statements conveyed both that defendant was not free to leave and that the police officers were there to talk to defendant about matters that would be of interest to her probation officer. And, as an additional bar to defendant's ability to leave, one of the police officers stood in the office's doorway.

Third, the pressure exerted on defendant was significant. Although the police officers requested to speak with defendant and her probation officer, and defendant and her probation officer agreed to that request, the police officers then told the probation officer that they did not want him to excuse defendant. Thus, at a time when defendant was not free to leave, she was then subjected to confrontational questioning that assumed her guilt. They told defendant that they

"knew everything" that she was doing. They told her that they "knew she was selling drugs" and that they wanted to know "how much she had on her." They "display[ed] an air of confidence in [her] guilt" and "posited [her guilt] as a fact." *Miranda*, 384 US at 450. Even more importantly though, defendant was subject to probation conditions that created a significant risk that she would believe either that she did not have the right to remain silent during the interrogation or that, if she exercised that right, she would be penalized. As mentioned, defendant was required to obey all laws, answer all reasonable inquiries by her probation officer, and consent to searches at her probation officer's request if he had reasonable grounds to believe that evidence of a probation violation would be found. Although the police officers did not explicitly point out defendant's probation conditions, defendant was responsible for knowing them, and everyone in the office during the interrogation would have been aware that defendant was subject to probation conditions and that she could be arrested, prosecuted, and penalized for violating them. Defendant's probation officer was in the room with the police officers and defendant; indeed, the police officers had had him stay. A reasonable person in defendant's position would have recognized that (1) if she did not answer the police officers' questions, her probation officer could repeat the questions; (2) if she did not answer her probation officer, he could arrest her for violating a condition of her probation; and (3) if a court found that she had violated her probation, it could send her to prison for up to 20 months. Similarly, a reasonable person in defendant's position would have recognized that refusing to consent to a search could ultimately lead to her arrest, prosecution, and imprisonment for violating the condition that she consent to searches at her probation officer's request if he has reasonable grounds to believe that evidence of a probation violation would be found. Thus, defendant was in state-created circumstances that carried a significant risk of undermining her ability or willingness to exercise her constitutional rights. She was facing the possibility of immediate arrest and subsequent prosecution and imprisonment for violating the conditions of her probation. Those circumstances were compelling circumstances for the purposes of Article I, section 12.

Although this case involves state law, we note that the Supreme Court has concluded that probation conditions that penalize the exercise of a person's Fifth Amendment right to remain silent and right to counsel are coercive. As discussed above, federal law requires *Miranda* warnings before custodial interrogations. It does not require them in "otherwise compelling circumstances" as Oregon law does. *McAnulty*, 356 Or at 454. But, in cases involving whether, for the purposes of the Fifth Amendment, a defendant's statements were compelled, the Supreme Court has stated that interrogations of probationers whose conditions of probation require them to answer questions by their probation officers are compelled.[5]

In *Minnesota v. Murphy*, 465 US 420, 104 S Ct 1136, 79 L Ed 2d 409 (1984), the defendant moved to suppress statements made during a meeting with his probation officer. The Supreme Court considered the conditions of the defendant's probation to determine whether the defendant's statements were compelled. *Id.* at 426. One of the conditions required the defendant to "be truthful with [his] probation officer 'in all matters.'" *Id.* at 422. The Court explained that a state may not impose an affirmative obligation to respond if the "questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution." *Id.* at 435. Therefore, the Court further explained, if a state were to assert, either expressly or by implication, "that invocation of the privilege [against compelled self-incrimination] would lead to revocation of probation, * * * the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." *Id.* Ultimately, however, the Court

---

[5] Under the Fifth Amendment, a person is ordinarily required to timely assert the privilege against self-incrimination. *Minnesota v. Murphy*, 465 US 420, 427, 104 S Ct 1136, 79 L Ed 2d 409 (1984). The "usual rule" is that, if a person "makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Id.* at 427-28. But the "usual rule" does not apply in custodial interrogations, *id.* at 429, or when "the assertion of the privilege is penalized so as to foreclose a free choice to remain silent, and * * * compel * * * incriminating testimony," *id.* at 434 (internal quotation marks and brackets omitted). Thus, when presented with the question of whether a person's failure to timely assert the privilege during a noncustodial interrogation should be excused, the Court determines whether the person's disclosure was "compelled." *Id.* at 434-35.

concluded that the defendant's statements were not com-
pelled, because the defendant's probation condition "pro-
scribed only false statements; it said nothing about his free-
dom to decline to answer particular questions[.]" *Id.* at 437.

Following *Murphy*, the Ninth Circuit held in *United
States v. Saechao*, 418 F3d 1073, 1075 (9th Cir 2005), that
statements made by the defendant—who was subject to
Oregon's statutory probation conditions, including the condi-
tion requiring him to "promptly and truthfully answer all rea-
sonable inquiries" by his probation officer—were compelled.
The court noted that, in contrast to the probation condition at
issue in *Murphy*, the defendant's probation condition imposed
an "affirmative obligation to respond to his probation officer's
questions." *Id.* at 1078. In other words, the defendant was
"compelled by threat of penalty to answer the probation offi-
cer's inquiry." *Id.* In light of that threat, the court concluded
that the state had taken the "'impermissible step'" of requir-
ing the probationer "'to choose between making incriminat-
ing statements and jeopardizing his conditional liberty by
remaining silent.'" *Id.* (quoting *Murphy*, 465 US at 436).

Thus, in both *Murphy* and *Saechao*, the courts
concluded that, for the purposes of the Fifth Amendment,
statements resulting from the interrogation of probationers
whose conditions of probation require them to make the
statements are compelled and, therefore, inadmissible. The
logic underlying those cases supports our conclusion that,
for the purposes of Article I, section 12, the circumstances
in the interrogation at issue in this case were compelling.[6]

### III.   CONCLUSION

In sum, we conclude that, before the police officers
questioned defendant, their actions created a significant
risk of undermining defendant's ability or willingness to
exercise her constitutional rights. To counter the coercive
effect of their actions, the police officers were required to
inform defendant of her *Miranda* rights before interrogating
her. Because they failed to do so, evidence resulting from the
interrogation is inadmissible.

---

[6] Defendant does not argue that any of the conditions of her probation vio-
lated her constitutional rights, and we express no opinion on the matter.

The decision of the Court of Appeals is reversed. The judgments of the circuit court are reversed, and the cases are remanded to the circuit court for further proceedings.