No. 544 June 18, 2025 309

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANIEL MARVIN MORAN,
*Defendant-Appellant.*

Washington County Circuit Court
22CN03619; A180342

Kelly D. Lemarr, Judge.

Argued and submitted October 15, 2024.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.*

ORTEGA, P. J.

Reversed and remanded.

_____

* O'Connor, Judge, *vice* Mooney, Senior Judge.

**ORTEGA, P. J.**

Defendant was found to be in violation of his probation conditions based on incriminating text messages that probation officers discovered on his phone. He appeals from the judgment revoking probation, contending that the discovery of the text messages resulted from a *Miranda* violation and should have been excluded at his probation revocation hearing, an argument the trial court summarily rejected. We hold that the exclusionary rule barring the admission of evidence obtained in violation of Article I, section 12, of the Oregon Constitution, applies in probation violation hearings, including probation revocation proceedings. Because the trial court concluded otherwise, it did not make any factual findings as to whether the circumstances that led to the discovery of the text messages required *Miranda* warnings. We therefore reverse and remand for further proceedings.[1]

Defendant was arrested for violating a condition of probation barring the possession of firearms. Probation officers discovered evidence of the violation subsequent to a scheduled office visit after they reviewed defendant's text messages on his phone. At the probation violation hearing, before any witnesses were called, defendant told the court that he expected the state to offer those text messages into evidence and raised "concerns regarding *Miranda.*" The court responded that it would address any evidentiary issues as they arose during the hearing. At the hearing, a probation officer testified about the events that led to discovery of the incriminating text messages. Defendant once again raised *Miranda* concerns, objecting that there was "a *Miranda* violation as well as search and seizure Fourth Amendment," asserting that he "should have been *Mirandized* prior to * * *

---

[1] In his second assignment of error, defendant contends that the trial court erred when it ordered that defendant may not be considered for sentence modification or alternative sanction programs without announcing that condition in open court or finding on the record that there were "substantial and compelling reasons" for that order. ORS 137.750(1); ORS 137.752(1). We agree with the state that this assignment of error is moot because defendant has served the jail sanction and was released in November 2023, and any decision on this issue no longer has a practical effect on his rights. *See State v. Walraven*, 282 Or App 649, 654, 385 P3d 1178 (2016) ("A case is moot when the court's decision will no longer have a practical effect on the rights or obligations of a party." (Internal quotations omitted.)).

[the probation officer] getting access to the phone." While defendant was articulating his objections, the court interjected, "So we're on a probation violation hearing, right?" Defendant assented, and the court continued, "All right, I just want to make sure we understand what proceeding we're in" and invited the state to respond, thereby cutting off defendant's argument. The state argued that the Fourth Amendment was inapplicable to probation violation proceedings but did not respond to defendant's *Miranda* argument. The court summarily overruled defendant's objection.

On appeal, defendant reprises his argument that the evidence found on his cell phone was the product of a *Miranda* violation and, as a result, it was inadmissible at his probation revocation hearing. The state responds that defendant's mention of *Miranda* was insufficient to preserve his argument under Article I, section 12.[2] Under the circumstances as they developed at the hearing, we conclude that defendant's references to *Miranda* were sufficient to preserve his constitutional argument. To explain why, we briefly review, first, the relationship between Article I, section 12, and the *Miranda* warnings, and second, the connection between that constitutional guarantee and the suppression of evidence obtained in violation of *Miranda*.

*Miranda* warnings have long been tied to Oregon's independent constitutional protection against compelled self-incrimination. Article I, section 12, of the Oregon Constitution provides, in part, that "[n]o person shall *** be compelled in any criminal prosecution to testify against himself." To carry out that protection, *Miranda* warnings are independently required by the Oregon Constitution. *State v. Magee*, 304 Or 261, 265-66, 744 P2d 250 (1987) (Article I, section 12, "furnishes an independent basis" for requiring that police administer *Miranda* warnings.); *State v. Mains*, 295 Or 640, 645, 669 P2d 1112 (1983) (*Miranda*-like

---

[2] On appeal, defendant argues that Article I, section 12, of the Oregon Constitution as well as the Fifth Amendment to the United States Constitution require that *Miranda* warnings are given before interrogating a probationer in compelling circumstances. Because defendant's Article I, section 12, argument is dispositive, we do not reach defendant's similar arguments under the Fifth Amendment. *State v. Kennedy*, 295 Or 260, 264-65, 666 P2d 1316 (1983) (we consider and dispose of questions of state law before considering federal constitutional claims); *see State v. Dean*, 309 Or App 249, 266 n 5, 481 P3d 322 (2021).

warnings must be given during psychiatric examination of a defendant conducted on behalf of the state to guarantee the right against self-incrimination under Article I, section 12). Officers must provide those warnings whenever the person being interrogated is in custody or in compelling circumstances. *E.g.*, *State v. Reed*, 371 Or 478, 486, 538 P3d 195 (2023); *State v. Roble-Baker*, 340 Or 631, 641, 136 P3d 22 (2006) (the court's "overarching inquiry" is whether a defendant was placed in "the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract"). The warnings are necessary "because of the inherent level of coercion that exists in such interrogations." *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007) (quoting *State v. Joslin,* 332 Or 373, 380, 29 P3d 1112 (2001)). Moreover, there is no dispute that probationers must be provided *Miranda* warnings to protect their Article I, section 12, right against compelled self-incrimination. *See, e.g.*, *Reed*, 371 Or at 480-81 (suppressing evidence derived from probationer's interrogation in compelling circumstances without being advised of her *Miranda* rights); *State v. Love-Faust*, 309 Or App 734, 741-44, 483 P3d 45 (2021) (analyzing whether a probationer's statements were obtained in violation of his *Miranda* rights).

Just as *Miranda* warnings are closely tied to Oregon's constitutional protection against compelled self-incrimination, so is the connection between that right and the suppression of evidence. Regardless of whether evidence is derived from actual coercion or a failure to provide *Miranda* warnings in compelling circumstances, such evidence is not admissible at a criminal trial. *E.g.*, *State v. Vondehn*, 348 Or 462, 475-76, 236 P3d 691 (2010) ("When the police violate Article I, section 12, whether that violation consists of 'actual coercion' or the failure to give the warnings necessary to a knowing and voluntary waiver, the state is precluded from using evidence derived from that violation to obtain a criminal conviction."); *Roble-Baker*, 340 Or at 643-44 (suppressing in subsequent criminal prosecution unwarned statements made during custodial interrogation). "[T]he Oregon Constitution does not require the exclusion of evidence obtained in the absence of *Miranda* warnings to deter illegal police conduct. The Oregon Constitution requires *Miranda* warnings to ensure that a waiver of the

rights conferred by Article I, section 12, is knowing as well as voluntary." *Vondehn*, 348 Or at 480. In other words, both *Miranda* warnings themselves and the suppression of evidence obtained in violation of *Miranda* operate to give effect to Article I, section 12.

At the hearing, defendant twice raised the issue of a "*Miranda* violation" and both times the trial court indicated its understanding that he was raising the issue of whether the text messages should be suppressed. The court's exchange with defendant and its ruling suggested that it assumed that the exclusionary rule did not apply to probation violation hearings. Because *Miranda* warnings, Article I, section 12, and suppression are so closely connected, and given the context of this hearing, defendant's short-hand reference to *Miranda* sufficiently raised the issue of whether text messages derived from a *Miranda* violation were admissible. *See State v. Skotland*, 372 Or 319, 327, 549 P3d 534 (2024) (explaining that "preservation is an inherently contextual inquiry" and a "short-hand reference" may be sufficient to preserve an issue, when "the other parties and the court would understand from that single reference the essential contours of the full argument") (internal quotation marks omitted). By twice raising the issue of a "*Miranda* violation," defendant adequately identified the legal issue at stake and provided the court with an opportunity to consider and correct any error immediately. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) ("[p]reservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made"). Accordingly, we conclude that the issue is preserved and proceed to the merits.

As noted, the trial court rejected defendant's *Miranda*-based argument, seemingly on the ground that suppression was not available as a remedy for a *Miranda* violation in defendant's probation revocation proceeding. That legal question—whether evidence obtained in violation of Article I, section 12, is admissible in probation violation proceedings—is one of first impression that we review for errors of law. *See State v. Dowty*, 299 Or App 762, 772, 452 P3d 983 (2019) (declining to reach this "significant and

as-yet-unresolved question"); *see also State v. Martin*, 370 Or 653, 657-58, 522 P3d 841 (2022) (reviewing the legal issue of a constitutional bar to admissibility of hearsay evidence in a probation revocation hearing for errors of law). As we will explain, we hold that, consistent with the protection of personal rights guaranteed by the Oregon Constitution, evidence obtained in violation of Article I, section 12, is not admissible in probation revocation proceedings.

We begin by noting that the protection guaranteed by Article I, section 12, is significantly broader than its text suggests. On its face, the provision states that "[n]o person shall * * * be compelled in any criminal prosecution to testify against himself." But the guarantee in Article I, section 12, is not limited to a "criminal prosecution." Rather, it applies to any judicial procedure in which the state seeks to compel incriminating testimony. *See State v. Langan*, 301 Or 1, 5, 718 P2d 219 (1986). And, it extends to nonjudicial contexts such as police interrogations. *E.g., State v. Jackson*, 364 Or 1, 21, 430 P3d 1067 (2018).

The protection of Article I, section 12, also is not limited to compelled "testimony" in the form of statements. *State v. Soriano*, 68 Or App 642, 646 n 4, 684 P2d 1220, *aff'd and opinion adopted*, 298 Or 392, 693 P2d 26 (1984) ("We see no reason to construe the Oregon Constitution to give protection from testifying but not from furnishing evidence."). It extends to the "compelled production of documents or chattels" and to furnishing other evidence. *Vondehn*, 348 Or at 468. As such, the prohibition against compelled self-incrimination protects the decision to furnish evidence in the first instance and does not distinguish between compelled statements and the compelled disclosure of physical evidence. *Id.*

The protections described above, as with other rights guaranteed by the Oregon Constitution, are personal or individual rights. *State ex rel Juv. Dept. v. Cook*, 138 Or App 401, 407, 909 P2d 202 (1996) (rights under Article I, section 12, may neither be invoked nor waived by another); *see also State v. Craigen*, 370 Or 696, 705, 524 P3d 85 (2023) ("[t]he Article I, section 11, right to counsel is an individual right"); *State v. Davis*, 313 Or 246, 254, 834 P2d 1008

(1992) (Article I, section 9, protects an individual's right to be free of unlawful search and seizure *vis-à-vis* the government). As we discussed above, the independent obligation, under the Oregon Constitution, to give *Miranda* warnings in compelling circumstances protects those personal rights by ensuring that any waiver of those rights is knowing and voluntary. *Vondehn*, 348 Or at 480.

To vindicate the rights guaranteed by the Oregon Constitution, evidence that is derived from a constitutional violation is suppressed. *Id.* at 474; *Davis*, 313 Or at 253 ("Individual rights so protected are vindicated through the sanction of suppression of evidence."). Under the Oregon Constitution, the rationale for suppressing such evidence is "'to preserve rights to the same extent as if the government's officers had stayed within the law.'" *Vondehn*, 348 Or at 473 (quoting *State v. Simonsen*, 319 Or 510, 512, 878 P2d 409 (1994) (alteration omitted). Suppression of statements and evidence derived from coercive interrogation secures the rights guaranteed by Article I, section 12, by restoring a person to the same position they would have been in had the state official remained within the limits of their authority. *State v. Finonen*, 272 Or App 589, 600-02, 356 P3d 656 (2015).

That rationale for the suppression of unconstitutionally obtained evidence applies with equal force to evidence that the state seeks to admit in probation revocation hearings. *State ex rel Juv. Dept. v. Rogers*, 314 Or 114, 120, 836 P2d 127 (1992) (suppression of evidence in probation revocation proceedings is required to vindicate an individual's rights under Article I, section 9). That is, at least in part, because those proceedings implicate a liberty interest "sufficiently analogous to the liberty interest at stake in traditional criminal prosecutions that the reasons for the sanction of suppression of evidence are equally applicable." *Id.*

That understanding is reflected in our case law. Although we did not explain our reasoning, we have at least once accepted the state's concession that evidence obtained in violation of *Miranda* should have been suppressed in a probation revocation proceeding—a concession we were not

obligated to accept. *See State v. Provost*, 258 Or App 902, 903, 311 P3d 992 (2013) (accepting that concession); *Cervantes v. Dept. of Human Services*, 295 Or App 691, 693, 435 P3d 831 (2019) (citing *State v. Bea*, 318 Or 220, 224, 864 P2d 854 (1993) ("We need not accept [a] concession concerning a legal conclusion.")).

Moreover, we have long remedied violations of Article I, section 9, by suppressing illegally obtained evidence in probation revocation proceedings, for the same reasons articulated above. Article I, section 9, protects a personal right to be free of unlawful searches and seizures, and suppression of evidence obtained in violation of that guarantee "restor[es] the parties to their position as if the state's officers had remained within the limits of their authority." *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). Because the rationale for excluding illegally obtained evidence is based on the protection of a personal liberty interest, it is not limited to criminal prosecutions and applies equally to probation revocation hearings. *Rogers*, 314 Or at 120.

We now make explicit what has been implicit in previous cases: Under the Supreme Court's interpretation of Article I, section 12, the Oregon Constitution requires suppression of statements and physical evidence derived from a violation of Article I, section 12, in a probation violation hearing. That determination is premised on the understanding that the exclusionary rule serves the purpose of preserving a defendant's rights "to the same extent as if the government's officers had stayed within the law," *Vondehn*, 348 Or at 473 (internal quotation marks omitted), and that a probation revocation hearing implicates a liberty interest analogous to the liberty interest at stake in a criminal prosecution. *Rogers*, 314 Or at 120.

The trial court's ruling effectively precluded defendant from asserting his challenge to the admissibility, in the hearing, of evidence which was arguably obtained in violation of *Miranda*. And, as a consequence, the trial court did not make any factual findings about the circumstances under which defendant provided the text messages to the probation officers or determine whether those circumstances were compelling such that *Miranda* warnings were required.

Because the court's ruling foreclosed defendant's ability to assert his Article I, section 12, right in his probation revocation hearing, we reverse the judgment and remand for further proceedings. *See* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party.").

Reversed and remanded.